Crim *et al. v.* Fleming.

---

No. 11,482.

## CRIM ET AL. *v.* FLEMING.

PRINCIPAL AND SURETY.—*Release by Surrender of Collateral Securities.*—Where a creditor has notice of the relation of principal and surety, he holds collateral securities in trust for the benefit of the surety, and the release of such securities releases the surety to the extent of the whole value thereof.

SAME.—*Assignment of Fees Due Debtor.—Surrender.*—Where a creditor receives an assignment of fees due the debtor as a public officer, and agrees to collect them and apply the proceeds to the payment of his claim, and, without the consent of the surety, he allows the debtor to collect and appropriate the proceeds, the surety is proportionally released.

SAME.—*Diligence of Creditor.*—Upon a failure of the creditor to use reasonable diligence to make collateral securities available, he is responsible to the surety for consequent loss, and without notice from the surety. And this does not violate the rule that mere passive negligence will not release the surety from obligation to pay on default.

SAME.—*Indemnifying a Surety.*—Where a principal pays to the surety sufficient money to indemnify him, the surety holds the money for the benefit of the creditor, to whom he occupies the position of a debtor.

From the Hamilton Circuit Court.

*J. W. Sansberry, M. A. Chipman* and *J. W. Sansberry, Jr.,* for appellants.

*E. P. Schlater, C. L. Henry* and *H. C. Ryan,* for appellee.

ELLIOTT, J.—The material averments of the first paragraph of the appellee's complaint may be thus summarized: On the 13th day of March, 1877, William Crim obtained judgment against Thomas J. Fleming as principal and the appellee as surety for $1,389.79. The principal debtor was the clerk of the county of Madison from October, 1870, to the 15th day of October, 1874, and there was due him as fees on the 12th day of April, 1878, $4,000. On that day these fees were by him assigned to Crim by the following written instrument: "For value received I hereby assign to William Crim, of Anderson, Indiana, all unpaid fees due me as the clerk of the Madison Circuit Court, as the same are taxed and charged upon the fee-records of said court, hereby authorizing said William Crim to receive and receipt for said fees as the same may be paid." This instrument was entered of record in the order-book of the Madison Circuit Court on the day it was executed. At the time the assignment was made the uncollected fees due Thomas J. Fleming were of the value of more than $2,000. The assignment was made as a security for the judgment on which the appellee was surety, and was accepted by the appellant as additional security for its payment. In 1880 the appellant assigned back to Thomas J. Fleming all the fees, and did it without the knowledge of the appellee.

The second paragraph differs from the first in this, that it does not aver that the fees were assigned back to Thomas J. Fleming. It does, however, aver that Crim received of the fees the sum of $471.53, and that he suffered Thomas J. Fleming to collect the fees to the amount of $500, and that Crim neglected to collect the remainder of the fees, and suffered those owing them to become insolvent. It is also averred that "The said assignment was made for a security on said judgment, and to be held and collected by said William Crim and paid on said judgment, and William Crim accepted the assignment of said fees as security on said judgment, and to

collect and pay the same thereon." The insolvency of the assignor and principal debtor is also averred.

The release of securities held by the creditor releases the surety to the extent of the value of the securities released. The first paragraph of the complaint is good, for the reason that it shows the release of securities exceeding in value the amount of the debt due the creditor.

The second paragraph of the complaint is good, for the reason that it shows that the creditor undertook to collect the fees assigned to him, and that he negligently failed to do so. The complaint shows more than mere passiveness on the part of the creditor, for it shows that he permitted the principal debtor to collect the fees and appropriate them to his own use. It is quite clear that a creditor who receives from the principal debtor securities which he undertakes to collect and apply on the debt is guilty of positive negligence if he surrenders them to the principal debtor, and permits him to collect and appropriate the proceeds. Equity will not suffer the rights of the surety to be thus frittered away. There was here an express agreement to collect and apply the money to the payment of the debt, and it was a violation of this agreement to permit the principal debtor to regain possession of the securities and use them for his own benefit. The case falls within the rule, that "The surety is discharged where collateral securities held by the creditor from the principal debtor are voluntarily returned without the consent of the surety, at least to the value of such collateral securities." Colebrooke Collateral Securities, 311, section 240.

The second paragraph of the answer alleges that the assignment was ineffective, because not entered on or attached to the judgment-docket or fee-book. This theory can not be sustained. The assignment was an equitable one, and operated to vest in the assignee the equitable title, and this is sufficient. *Burson* v. *Blair*, 12 Ind. 371; *Scobey* v. *Finton*, 39 Ind. 275; *Cravens* v. *Duncan*, 55 Ind. 347; *Adams* v. *Lee*, 82 Ind. 587. The question here is, not as to the rights of the

debtor, but as to the rights of the surety, and section 604 of the statute has no application whatever.

The complaint avers, and the answer admits, because the averment is not denied, that the fees were due the appellee's principal, and no question is presented as to his right to assign them.

The fourth paragraph of the answer purports to answer so much of the second paragraph of the complaint as seeks to recover for the fees and costs collected by Thomas J. Fleming, and it is alleged that the assignment was not entered on the judgment docket nor attached thereto; that the persons owing the fees paid them to Thomas J. Fleming without the knowledge of the appellant. We regard this paragraph as clearly bad. As the appellant had accepted the assignment and agreed to collect the fees, he was bound to take such steps as were reasonably necessary to make the assignment effective. "A creditor holding collateral securities is chargeable with a trust concerning the same for the benefit of the surety, where he has notice of the existence of such relation as between the parties to the note." Colebrooke Collateral Securities, section 239. When we add, as must be done in this case, to the duty created by law the duty created by the express agreement of the creditor to collect the collateral security assigned him, it seems clear that his failure to use reasonable diligence to make the security available should operate to release the surety. The effect of such an agreement, when combined with the general duty imposed by law, is to assure the surety that the creditor will do what is reasonably necessary to make the security effective, and that if there is a violation of the duty created by contract and by law, and consequent loss, the surety is discharged. The surety has a right to rely upon the creditor's agreement, and to permit the latter to disregard it, would operate to ensnare and mislead the former. We do not believe that a surety is bound to notify the creditor to keep his engagement, but do believe that the creditor must perform it without notice. We can perceive

no reason for discriminating such an agreement from any other, and we know of no principle that denies one contracting party compensation for a breach of a contract, because the other party was not prodded into performing it by notice. There is a stubborn conflict in the authorities as to the soundness of the doctrine, adopted in *Philbrooks* v. *McEwen*, 29 Ind. 347, that a creditor who accepts a mortgage as a collateral security does not release a surety by an omission to record it within the time required by law. Brandt Suretyship & Guaranty, sections 384, 385, 386, 387; Colebrooke Collateral Securities, section 241. But the case in hand is not within that rule, for here there was an express agreement to collect, and this makes an essential difference, for a breach of an agreement can not be justly regarded as inaction or passive neglect. In stating the rule declared by the authorities which support the doctrine of *Philbrooks* v. *McEwen, supra,* the author last referred to uses this language: " In the absence of an express agreement to use diligence, or of such special circumstances as to render prompt action of the creditor an absolute duty, the mere inaction or passive delay, or omission of the creditor to enforce the collection of collateral securities held by him from the principal debtor, is not sufficient of itself to discharge or release a surety from his obligation to pay the debt upon default." Colebrooke Collateral Securities, section 241. It is evident from this statement that the fact that there was an express agreement to collect the securities assigned by the creditor takes the case out of the general rule, for it adds a new element of controlling importance.

The seventh paragraph of the answer avers that Thomas J. Fleming fully paid to the plaintiff the whole of the judgment, principal, interest and costs, before the commencement of the suit. In our opinion this answer is good. If the surety had been paid the full amount for which he was liable, he could not be injured by any wrong or omission of the creditor. The money received by him from his principal indem-

Crim *et al. v.* Fleming.

nified him, and no matter what the creditor did with the collateral securities, he could lose nothing. The money received was his only as an indemnity, and if he should be compelled to use it in paying the creditor, he would lose nothing. Where a surety is indemnified by the principal, he is not released by any indulgence granted by the creditor, nor by any negligence on his part in regard to the collection of the collateral securities assigned to him by the principal debtor. Story Eq. Juris. (10th ed.), section 502 *b.* The authorities upon this subject go very far, for it is said: "A surety who is fully indemnified is not discharged by the release of the principal. In such case the surety himself occupies the position of a principal." Brandt Suretyship & Guaranty, section 123. Payment to the surety by the principal is the most ample indemnity that could well be made, for, with the money in his hands, the surety is absolutely safe from loss, and no act that the creditor can do can injure him.

If, as the answer avers and the demurrer admits, the money was paid by the principal to the surety on the judgment, the only just claim that the latter can have to it is that which accrues to him in his character of surety, and in equity he really holds the money for the benefit of the creditor, to whom he occupies the position of a debtor. It is logically inconceivable that any acts of the creditor could cause him injury, for no additional burden or risk can be imposed on him while he has the money to pay the debt in his own hands.

It is too plain to be fairly debatable that the defence pleaded is not admissible under the general denial.

Judgment reversed.

Filed March 19, 1885.