No. 12,552.

## WASSON v. HODSHIRE.

PRINCIPAL AND SURETY.—*Negligence of Creditor in Collection of Debt.—Release of Surety.*—Any affirmative act of the creditor, such as the release or fraudulent surrender of a collateral security, whereby an indemnity of which the surety might avail himself is lost to him, discharges the surety *pro tanto;* but mere passive negligence of the creditor in the collection of his debt, either from the principal debtor or from collateral securities held by him, does not discharge the surety.

PRACTICE.—*Striking Out Evidence.—Harmless Error.*—Where a party is not injured by the striking out of evidence, the ruling, even if erroneous, is not available for the reversal of a judgment.

From the Montgomery Circuit Court.

*E. C. Snyder* and *R. J. Greene,* for appellant.

*P. S. Kennedy, S. C. Kennedy, T. H. Ristine* and *H. H. Ristine,* for appellee.

NIBLACK, J.—This was a proceeding by James Wasson against Martha Hodshire to have a judgment declared satisfied, and to have satisfaction of such judgment accordingly entered.

The circuit court made a special finding of the facts, adjudged to have been satisfactorily proven, which may be briefly stated, as follows:

*First.* That, on the 7th day of May, 1872, the plaintiff and one John Wasson were the joint owners of a particularly described tract of land in Montgomery county, estimated to contain one hundred and sixty acres.

*Second.* That, on that day, the plaintiff and the said John Wasson borrowed of the defendant the sum of $2,250, and executed to her their promissory note for that sum, to secure the payment of which a mortgage was also executed by them on the tract of land above referred to.

*Third.* That one-half of said sum of $2,250 was received by the plaintiff, and was for his use and benefit, and that the remaining half of said sum was received by the said John Wasson, and was for his use and benefit.

*Fourth.* That as to the one-half of said sum of $2,250 so received by the said John Wasson, the plaintiff was only surety for him, the said John Wasson, which fact became known to the defendant on the 20th day of May, 1876.

*Fifth.* That, on the 7th day of April, 1875, the plaintiff paid to the defendant one-half of the amount then due upon the note executed by him and the said John Wasson as above stated, the sum so paid being the amount for which the plaintiff was liable as principal on said note.

*Sixth.* That, on said 7th day of April, 1875, the defendant released all the interest of the plaintiff in and to the tract of land mortgaged to her as above set forth, from the lien of the mortgage.

*Seventh.* That, on the 13th day of April, 1876, the defendant commenced a suit in the Montgomery Circuit Court against the plaintiff and the said John Wasson for the balance due on the note executed by them and to foreclose the mortgage given to secure the payment thereof, which suit, on the 20th day of May, 1876, resulted in a judgment against the plaintiff and the said John Wasson for the sum of $1,-484.40, including attorney's fees, and a decree of foreclosure of the mortgage as to the interest of the said John Wasson in the mortgaged lands, being one undivided half thereof.

*Eighth.* That, on the 3d day of November, 1876, a copy of said judgment and decree was duly certified to the sheriff of Montgomery county, who afterwards advertised the in-

terest in the mortgaged lands ordered to be sold, for sale on the 21st day of April, 1877.

*Ninth.* That, at the time of the rendition of said judgment and decree, the said John Wasson had become a bankrupt, and Mahlon D. Manson was his assignee in bankruptcy and had succeeded to all his rights in the mortgaged lands.

*Tenth.* That by certain proceedings in partition in the Montgomery Circuit Court, the interest which John Wasson held in the mortgaged lands, at the time he became a bankrupt, was assigned and set off to the said Manson as his assignee in severalty, and the interest which the plaintiff held in said lands was also assigned and set off in severalty to him.

*Eleventh.* That the part of the lands thus set apart to Manson as assignee was subject to the lien of the defendant's mortgage, and that said part of said lands was suffered to, and did, become delinquent for the non-payment of taxes, and was afterwards, on the 14th day of February, 1879, at a sale for delinquent taxes, sold to one Hector S. Braden.

*Twelfth.* That thereafter, on the 14th day of February, 1881, the said Hector S. Braden, having acquired a tax deed for the part of the mortgaged lands so purchased by him at a sale for delinquent taxes, commenced an action in the Montgomery Circuit Court against the defendant herein and others, to quiet his title to the real estate described in his tax deed, and obtained a judgment against the defendant hereto quieting his title to such real estate; that the defendant failed to appear to said action, and suffered judgment therein to go against her by default, thereby permitting herself to be deprived of the benefit of her lien on the mortgaged lands, under her mortgage, as a security for the payment of her judgment against the plaintiff and the said John Wasson.

Upon this finding of facts the circuit court came to the following conclusions:

*First.* That as the loss of mortgage security was not occasioned by any affirmative act of the defendant, but was the result of a mere failure on her part to pay the delinquent

taxes on the land, she was not guilty of such negligence in respect to the loss of the mortgage security as released and discharged the plaintiff as surety in the judgment upon the mortgage debt.

*Second.* That the defendant was entitled to judgment in her favor upon the facts found as above.

The plaintiff reserved exceptions to the conclusions of law thus arrived at by the circuit court, and, a motion for a new trial thereafter entered being denied, final judgment was rendered in favor of the defendant.

Error is assigned upon the conclusions of law, stated as above, and upon the refusal of the circuit court to grant a new trial.

In addition to the facts, as they were substantially found at the trial, the complaint averred that, at a sheriff's sale, the defendant had bid off the mortgaged lands at a price sufficient to cover the principal, interest and costs due upon the judgment upon the mortgage debt, but that she had failed to pay the costs which had accrued on such judgment and sheriff's sale, and had otherwise refused to complete her purchase thus made of the mortgaged lands.

In support of his complaint the plaintiff read in evidence the judgment upon the mortgage debt and the decree of foreclosure against him and John Wasson, together with a certified copy of such judgment and decree, which had been issued to the sheriff of Montgomery county. He also read in evidence two receipts endorsed upon said certified copy; one from the sheriff acknowledging the receipt of $1,620.70 from the defendant in full, her bid and purchase-money on the lands therein described, and the other from the defendant acknowledging the receipt of $1,566.60 from the sheriff, in full of principal and interest due on the judgment referred to in such certified copy. But no return by the sheriff to the certified copy of the judgment and decree, showing a sale of the lands to the defendant and a refusal by her to complete her purchase, was read in evidence. Nor was any evidence either

introduced or offered which supplied the place of such a return, and the fair inference from the evidence offered was that the sheriff made no formal return to such certified copy. The circuit court, after hearing all the evidence, ordered the two receipts which had been introduced as stated to be struck out, and refused to consider them as evidence in the cause.

It is first argued that the facts as found at the trial established a degree of negligence and bad faith on the part of the defendant sufficient to entitle the plaintiff to a discharge from all further liability on the judgment upon the mortgage debt, and that consequently the circuit court erred in its conclusions of law drawn from the facts so found at the trial.

It is often difficult, when considered as an original and independent question, and with reference alone to the principles of equity and fair dealing, to determine upon whom, as between a creditor and a surety, the loss of a collateral security ought to fall; but, when considered with reference to the adjudicated cases, the question is divested of much of the difficulty which would otherwise attend its proper application.

It is now well settled that an affirmative act of the creditor, such as the release or fraudulent surrender of a collateral security, whereby an indemnity, of which the surety might avail himself, is put out of his reach, discharges the surety *pro tanto;* but that the mere passiveness of the creditor in the collection of his debt, either from the principal debtor or from collateral securities held by him, does not afford a sufficient ground for discharging the surety. *Philbrooks* v. *McEwen,* 29 Ind. 347; *Vance* v. *English,* 78 Ind. 80.

By way of further illustration, it has been said as applicable to cases similar in principle to the one in hearing, that so long as the surety chooses to remain passive, the creditor may also remain passive as regards the collection of his debt. *Philbrooks* v. *McEwen, supra.*

In this case, the plaintiff Wasson might have paid the judgment and been subrogated to all the rights of the defendant in the mortgaged lands, but, failing in that, he has no reason

to complain of the mere passive negligence of the defendant in permitting a loss of her mortgage lien. The circuit court did not, consequently, err in its conclusions of law from the facts as it found them upon the evidence.

It is further argued that the circuit court erred in striking out the two receipts read in evidence, and in refusing to consider them as evidence in the cause, and that for that reason a new trial ought to have been granted. There was no averment in the complaint concerning these receipts, and they were, hence, not relied upon as evidence that the judgment on the mortgage debt had been paid. They only tended to prove that the defendant herein had purchased the mortgaged lands at sheriff's sale, but they did not of themselves establish the fact that she had so purchased these lands, and as the evidence was not otherwise sufficient to establish that fact, no material injury was inflicted upon the plaintiff by striking out those receipts as evidence in the cause.

The judgment is affirmed, with costs.

Filed Oct. 12, 1886.