## PITTSBURGH STEEL CO. v. STANDARD ACCIDENT INS. CO. et al.

### No. 1069.

District Court, E. D. South Carolina, Columbia Division.

Jan. 21, 1944.

Hunter A. Gibbes, of Columbia, S. C., for plaintiff.

Douglas McKay (of McKay & McKay), of Columbia, S. C., for defendant Standard Accident Ins. Co.

Roger M. Heyward, of Columbia, S. C., for defendant F. D. Kimbrough, Trustee in Bankruptcy.

TIMMERMAN, District Judge.

This case comes before me on a motion to dismiss the complaint and for judgment filed by the defendant, Standard Accident Insurance Company, under 12(b), (c) Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

### Facts

The plaintiff, Pittsburgh Steel Company, furnished materials in the amount of many thousand dollars to Plowden & Roberts, subcontractors, which were used in the construction for the United States government of a project known as Wabash River Ordnance Works, near Newport, Indiana. The prime contractor was E. I. DuPont de Nemours & Company, Inc., of Wilmington, Del., and under its subcontract with Plowden & Roberts, a copartnership with principal place of business at Columbia, S.C., performance and payment bonds were re-

quired. We are concerned here only with the payment bond which is the subject of this action, which was written by Standard Accident Insurance Company of Detroit, Michigan, as surety with Plowden & Roberts as principals and The DuPont Corporation as obligee, in the penal amount of $34,778.60. As far as involved here the bond was conditioned for the payment of all material supplied in the prosecution of the construction.

The complaint sets forth in the ninth paragraph:

"That, pursuant to the terms of said contract, the E. I. DuPont De Nemours & Company, Inc., paid from time to time during the course of work certain payments on the contract price, and finally when the work agreed to be performed by Plowden & Roberts had been finished, the said E. I. DuPont De Nemours & Company, Inc., as provided in said contract, required Plowden & Roberts to furnish a release of lien signed by Pittsburgh Steel Company releasing all manner of liens, claims and demands whatsoever which Pittsburgh Steel Company might or could have against the project known as Wabash River Ordnance Works; that, accordingly, on or about May 25, 1942, after the said work had been fully completed, Pittsburgh Steel Company at the request of Plowden & Roberts, and for the purpose of enabling Plowden & Roberts to collect the balance of the money owing under the contract to them by E. I. DuPont De Nemours & Company, Inc., and by reason of the assurance of Plowden & Roberts that upon payment of the said money Plowden & Roberts would pay Pittsburgh Steel Company for said material furnished for the said job, executed the release of lien required by E. I. DuPont De Nemours & Company, Inc., and delivered the said release to Plowden & Roberts, and that a copy of said so-called release of lien is hereto annexed and made a part of this Complaint; and in July, 1942, said contractor paid Plowden & Roberts in full."

The release referred to and attached as part of the complaint sets forth at length a discharge of all "liens, claims, and demands" against the project. For the purposes of this decree, we quote only the following:

"State of Pennsylvania    To-wit:
"County of Alleghaney
"This day came before the undersigned, a Notary Public in and for the county afore-

said C. E. Richenbach, Assistant Treasurer Pittsburgh Steel Company, a Subcontractor, who being by me first duly sworn, deposes and says, that all claims for labor employed and/or materials furnished or used by him in and about the erecting of the RDX plant known as the Wabash River Ordnance Works, mentioned and referred to in the release of which this affidavit is a part, have been paid in full. Further affiant saith not:
    "(Signed) C. E. Richenbach
"Sworn and subscribed to before me this 25th day of May 1942. Witness my hand and notarial seal        Ray Maxwell,
        "Notary Public."

This affidavit portion of the release is peculiarly pertinent to plaintiff's cause of action, and as alleged in the complaint the execution of this instrument and its filing with the prime contractor resulted as was intended by the Pittsburgh Steel Company in the payment by DuPont Company to Plowden & Roberts of percentages and estimates withheld pursuant to the subcontract, in a sum admittedly in excess of $13,000.

The verified complaint shows that the funds were released to Plowden & Roberts in July, 1942, and that demand was made by Pittsburgh Steel Company upon the defendant Bonding Company on 26th February, 1943, for payment to it of the full penalty of the bond to apply against the indebtedness of Plowden & Roberts to it for materials furnished on this project amounting in value to $42,080.10. At that time Plowden & Roberts were in bankruptcy and their affairs were in the hands of this court. The complaint states that the plaintiff has filed its claim in the bankruptcy proceedings of Plowden & Roberts, and is verified by one C. E. Richenbach, Assistant Treasurer, who also signed the affidavit in the release furnished DuPont Corporation setting forth that all materials furnished on the Wabash Ordnance project had been paid for.

It was admitted at the hearing that plaintiff made no contention that the defendant bonding company had any knowledge of the circumstances connected with the release of the funds to the sub-contractors; and the verified allegations of the Standard's answer are that the demand for payment made by plaintiff on 26th February 1943, was the first notice it had of the claim.

## Conclusions of Law

All pleadings, duly verified, are before the court, there is no controversy as to the facts, and the cause is ready for a final determination.

■ Tersely stated, the inquiry presented is: Has the materialman, Pittsburgh Steel Company, for materials furnished to sub-contractors Plowden & Roberts, used in a government project, a right to recover against the sub-contractors' surety bond given to DuPont Corporation, the prime contractor, to secure payment for such materials, when without knowledge of the surety the Steel Company, on the faith of an agreement as to payment with the sub-contractors had furnished a false sworn receipt of payment in full to the prime contractor, thereby inducing the release of thousands of dollars of retained percentages to the subcontractors who some months later became bankrupt?

The court is impelled to the conclusion that plaintiff is estopped to recover against the defendant.

In Kansas City Marble & Tile Co. v. Penker Const. Co. et al., 4 Cir., 86 F.2d 287, 288, our Circuit Court of Appeals rendered a decision in a case where the facts are analogous, and which also disposes of a contention of plaintiff's counsel that the so-called release of lien executed by the plaintiff to DuPont was formal and meaningless. The following from that opinion is conclusive:

"We think it not improper to say, however, that a careful examination of the record convinces us that the ruling below was correct. It is true that there was no lien for labor or materials upon the public building which was being constructed, but the 'waiver of lien' as executed embraced 'claims' as well as 'liens' and 'right to lien' for labor and materials furnished. As there could be no lien upon the public building, we think it clear that the word 'claims' in the waiver should be construed as having reference to claims under the bond for materials furnished, and should not be held to be limited to claims to a lien which could have no existence under the law. And we agree with the judge below that petitioner is estopped from asserting a claim against the bond for the materials furnished, since it is clear that petitioner intended by the execution of the waiver to assure the general contractor that petitioner would assert no claim against him for materials furnished and that the general contractor was thereby induced to make settlement with the subcontractor. All parties understood that payments would not be made to the subcontractor so long as claims for materials furnished him might be asserted against the bond; and the waiver was executed by petitioner to be used by the subcontractor in obtaining such payments. Having thus aided the subcontractor to obtain the payments, petitioner ought not to be heard to say that the waiver contemplated nonexistent liens rather than claims against the bond which had been provided in lieu of lien for the protection of laborers and materialmen."

Defendant's interest in these funds was inherent in the bond contract and plaintiff's action in destroying this interest materially altered the contract and discharged the responsibility of the surety.

In City Council of Greenville v. Ormand, 51 S.C. 121, 28 S.E. 147, the Supreme Court of South Carolina declares:

"Where a [builder's] contract provides for a 10 per cent. reserve, voluntarily paying the same to the contractor before he is entitled thereto, and without his sureties' consent, is such a material alteration of the contract as releases the sureties, regardless of the question of their possible benefit."

The defendant here being a "compensated surety", the following statement of the South Carolina Court in Salway v. Maryland Cas. Co. 176 S.C. 215, 179 S.E. 787, 792—an opinion by the late lamented Chief Justice Bonham, then Associate Justice—is pertinent:

"It is the modern rule that sureties who become such for financial consideration are not entitled to the same consideration as are sureties who become such from motives of friendship or accommodation. However, the commercial surety is entitled to be safeguarded in his rights. It is fundamental that if the beneficiary of a written obligation release the obligor of any material conditions of the obligation without the knowledge and consent of the surety, the surety is released."

In Crane Co. v. James McHugh Sons, Inc., 10 Cir., 108 F.2d 55, 60, the pertinent headnote states the principle applicable here:

"Where materialman gave to general contractor a release as respects claims for

materials furnished to particular subcontractor, with the result that contractor made payments to subcontractor without showing that the materials had been paid for, both contractor and the surety companies were discharged from liability to materialman, especially since surety companies would have been subrogated to materialman's claim against contractor but for the release."

It is needless to burden this decree with further authorities to sustain the court's finding that plaintiff by its actions as set forth in the complaint is estopped to recover.

There are further considerations equally strong that bar the right of plaintiff to recover.

■ The pleadings show that plaintiff and Plowden & Roberts entered into an agreement concerning payment to which the defendant surety was not a party. Pursuant thereto plaintiff furnished lien release and affidavit of payment for Plowden & Roberts to procure the retained percentages for themselves from DuPont regardless of circumstances. Since the retained percentages were impressed with equities in favor of the defendant surety among others, DuPont under its contract with Plowden & Roberts had demanded the release and affidavit as a condition precedent to its remitting the retained percentages to them. Hence the action of plaintiff was intended to and did result in DuPont's releasing substantial sums to Plowden & Roberts; this materially changed the position of all the parties and completed the creation of a novation. Crane Co. v. James McHugh Sons, Inc., 10 Cir., 108 F.2d 55, 59 (and authorities cited notes 10 and 11.) The defendant surety was not a party to this, although its rights were prejudiced thereby; therefore, it is discharged from liability insofar as this plaintiff is concerned. Because of the novation, plaintiff must now look to the bankrupt estate of Plowden & Roberts for payment.

A review of the situation in its entirety supports a finding of fraud. Admittedly the affidavit of payment executed by plaintiff's Assistant Treasurer was false. It was made and filed to bring into the hands of Plowden & Roberts thousands of dollars of retained percentages in which the surety had a real interest. Some six months later when Plowden & Roberts became bankrupt, and after plaintiff had filed its claim in the bankruptcy proceedings in this court, it first gave notice to the defendant company, and demanded payment therefrom; and subsequently instituted this action, verified by the same official who signed the affidavit of payment. Disregarding the fact that its false statement under oath had immeasurably impaired the rights of the surety, it now seeks to recover against the surety because the affidavit was false and payment had not been made. Such conduct does not commend itself to the court. The bond contract was destroyed thereby, for as has been well said by a distinguished judge who at one time occupied the bench of this court, "Fraud is an acid that destroys what it touches." (Judge H. A. M. Smith)

### Judgment

Both from the pleadings and from the admission of plaintiff's counsel, no relief is sought against F. D. Kimbrough, trustee of the estate of Plowden & Roberts, bankrupts; therefore, it is ordered that the complaint as to F. D. Kimbrough, trustee, be dismissed; it is further ordered that the complaint as to Standard Accident Insurance Company be dismissed and judgment in its favor entered.