**INDIANA NAT. BANK OF INDIANAPOLIS**
v.
**GOSS.**

**No. 10853.**

United States Court of Appeals
Seventh Circuit.

Dec. 16, 1953.

Herman Herson, Harold E. Marks, Chicago, Ill., for appellant.

Charles J. O'Laughlin, Chicago, Ill., Johnston, Thompson, Raymond & Mayer, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, FINNE-GAN, Circuit Judge, and PLATT, District Judge.

PLATT, District Judge.

Plaintiff-appellee, Indiana National Bank of Indianapolis, a National Banking Association, having its principal place of business in Indianapolis, Indiana, filed a complaint against the defendant-appellant Dudley Goss, a citizen of Illinois, seeking a judgment for the unpaid balance on four promissory notes,

delinquent interest thereon and attorney fees.

The facts disclose that Carolina Motor Express Lines, Inc. by Dudley Goss, President, was the maker on two of the notes, with Dudley Goss individually endorsing these two notes. The other two notes involved were signed by Goss Trucking Company by Dudley Goss as maker, and were endorsed by Carolina Motor Express Lines, Inc. by Dudley Goss, President. At the times these notes were executed, the Goss Trucking Company was either a partnership of which Goss was a partner or an individual enterprise owned by Goss.

Each of these notes was secured by a chattel mortgage covering trucks and equipment and provided for 8 per cent interest per annum from date of maturity on each installment until paid with attorney fees. The makers and endorsers waived presentment for payment, protest, notice of protest, and notice of non-payment.

The notes were all payable to the Union Trust Company of Indianapolis, at its banking house in Indianapolis, Indiana. The notes further provided:

"The holder hereof shall not be obligated to sell any of the said property unless directed in writing so to do by the undersigned. The holder hereof may at any time surrender to the owner any of the said property, with or without any substitution, and any party bound upon any obligation secured thereby shall in no way be released thereupon, and the holder hereof shall not be liable or responsible to such party on account thereof."

The plaintiff acquired these notes through merger with the payee Union Trust Company. The equipment, consisting of trucks, tractors, and trailers covered by the chattel mortgages, was owned partly by Carolina Motor Express Lines, Inc., and partly by Goss Trucking Company. The mortgages securing the notes on which the defendant Goss was the maker, included 21 of the vehicles.

The Carolina mortgages covered 27 of the vehicles. Goss became president of Carolina in 1947 and entered into a contract to purchase all the stock in the corporation by means of periodic payments. The Goss Trucking Company and Carolina were merged in July 1950, after all the notes and chattel mortgages had been executed and delivered. Goss remained in control of Carolina through September 11, 1950, except for a short period of time in the summer of 1950 when Sam Director and Sam Kessler assumed control under a contract to purchase the company. During this period, which amounted to five weeks or less, Director gave his notes to plaintiff for $7650. These notes were paid and credit was given. Goss again took control of Carolina about September 10, 1950, and on September 11, 1950, Carolina filed a voluntary petition for an Arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., in the District Court for the Northern District of Illinois. The purpose of the petition was to preserve Carolina as a going concern. The court on the same date at the motion of the debtor, approved the petition, continued the debtor in possession, and issued a restraining order prohibiting all persons from proceeding with any remedies against the debtor or its properties. The defendant continued as president of Carolina. On February 21, 1951, the plaintiff filed a reclamation petition to obtain possession of the equipment included in the chattel mortgages. Carolina filed answer thereto by the defendant Goss, as Vice President. Thereafter, on March 31, 1951, the defendant Goss entered into a contract to sell his stock in Carolina to the Mueller Transportation Company, for the sum of $100,000. The items of equipment which Goss was to deliver to the purchaser as part of the consideration for the purchase price included all but ten items of the equipment mortgaged to secure the payment of the notes in this suit. Mueller Transportation Company during its operation of Carolina Motor Express Lines, Inc. made payments to the plain-

tiff for the use of the equipment. The plaintiff authorized Mueller to exchange obsolete for new equipment. From time to time Goss released to the plaintiff all his right, title and interest in the equipment listed in the Reclamation Petition to permit these exchanges by Mueller in order to continue the business. The record does not disclose what equipment was in possession of Carolina at the time of the defaults on each of the notes. The defendant Goss never claimed that the plaintiff did not give credit for all moneys received as payments on the notes.

The defendant alleged in his answer that he suffered loss due to the plaintiff's failure to take possession of the mortgaged equipment immediately upon default, and as a matter of law he was discharged from liability as endorser upon the notes. The defendant further counterclaimed for this alleged loss. The district court dismissed the counterclaim and entered judgment for the plaintiff in the amount of $33,914.83 and costs, which amount included the principal sum due, interest at 8 per cent, and attorney fees.

The defendant Goss appealed from this judgment contending (1) That the law of the forum governs this suit; (2) That where a payee takes a chattel mortgage as security on a note the payee must proceed against the property included in the mortgage immediately upon default. That failure to do so discharges the surety or endorser; (3) That the endorser is not liable for attorney fees; (4) That the 8 per cent interest allowed was illegal.

At the outset it must be noted that the defendant was the maker of two of the notes, and therefore, the first three contentions in this appeal run solely to the notes which he signed only in the capacity of an endorser.

■ Defendant is partially correct that the law of the forum governs in this action. Inasmuch as this suit was filed and tried in Illinois we must apply the conflict of law decisions of the Illinois Courts.[1] The Illinois courts have held that the law of the place of performance of a contract, or the place of payment of a note, is the law which will govern the nature, validity, interpretation and effect of the obligation. George v. Haas, 311 Ill. 382, 143 N.E. 54; Hurtt v. Steven, 333 Ill.App. 181, 77 N.E.2d 204.[2] These notes were all payable in Indianapolis, Indiana, and we must look to the Indiana law in determining the merits of the defendant's contentions. In diversity cases we are bound to take judicial notice of the law of Indiana, without the necessity of pleading or proof of the applicable law and statutes. 28 U.S.C.A. § 1652; Petersen v. Chicago, Great Western Ry. Co., D.C.Neb., 3 F.R. D. 346, affirmed 8 Cir., 138 F.2d 304, 149 A.L.R. 755.[3]

■ ■ The defendant's second contention lacks merit. The most favorable inference that can be drawn from the evidence for the defendant is that plaintiff remained passive upon the default on the notes. This inaction did not discharge Goss an an endorser. The Indiana courts have definitely held that mere passiveness of the creditor in the collection of his debt from collateral securities held by him is not sufficient ground for discharging the surety or endorser. Philbrooks v. McEwen, 29 Ind. 347; Vance v. English, 78 Ind. 80;

1. 28 U.S.C.A. § 1652. "[F]ederal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the State in which they sit." Wm. J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 164 F.2d 290, 293, certiorari denied 333 U.S. 863, 68 S.Ct. 745, 92 L.Ed. 1142.

2. See also Wm. J. Lemp Brewing Co. v. Ems Brewing Co., supra.

3. United Divers Supply Co. v. Commercial Credit Co., 5 Cir., 289 F. 316; Trust Co. of Chicago v. Pennsylvania R. Co., 7 Cir., 183 F.2d 640, 645, 21 A.L.R.2d 238; Prudential Ins. Co. of America v. Carlson, 10 Cir., 126 F.2d 607. This is also the law of the State Courts of Illinois, Ill.Rev.Stat. 1953, Ch. 51, §§ 48g–48n. Also see Walker v. Lovitt, 250 Ill. 543, 550, 95 N.E. 631.

Hunter v. First Nat. Bank, 172 Ind. 62, 87 N.E. 734; Brown v. Nichols, Shepard & Company, 123 Ind. 492, 24 N.E. 339; Wasson v. Hodshire, 108 Ind. 26, 8 N.E. 621.[4]

Even if we assume that the law required diligence in liquidating the security by the plaintiff upon default, the defendant Goss would be in no position to complain in the instant case. He had knowledge of and acquiesced in the bank's failure to proceed against the mortgaged property.[5] He was president, vice president, and in control of Carolina during the period of the default on the notes. He was benefiting from the use of the equipment by Carolina since he held the stock of the corporation. He was given the opportunity of realizing the value from this interest, from the fact that Carolina kept the equipment and continued in business. Goss actively sought to prevent the bank from taking possession of the equipment. When the plaintiff filed a reclamation petition he as vice president filed an answer to prohibit the plaintiff from obtaining the equipment. This answer specifically stated

> "[T]hat the equipment * * * is vital and necessary to the continued operation of debtor's business."

Finally Goss released to the bank from time to time all his right, title and interest in the equipment after he sold the stock in Carolina to the Mueller Transportation Company.

The defendant complains that the plaintiff did not take possession of the chattels at the time of the petition of Carolina for Arrangement under Chapter XI of the Bankruptcy Act, and the issuance of the restraining order by the court. He inconsistently maintains that the court did not have jurisdiction or authority to issue such a restraining order as against the plaintiff when he was instrumental in obtaining the court's action. Section 314, Chapter XI, 11 U.S.C.A. § 714, "empowers the court, 'upon notice and for cause shown,' to 'enjoin * * * the commencement * * * of any proceeding to enforce any lien upon the property of a debtor.' " Collier on Bankruptcy, 14th Ed., Vol. 8, par. 3.22, p. 186. The court may enjoin a foreclosure of a chattel mortgage. In re Atlantic Steel Products Corporation, D.C.N.Y., 31 F.Supp. 408. Also see In re Brown, 7 Cir., 84 F.2d 433; Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 675–678, 55 S.Ct. 595, 79 L.Ed. 1110.

Furthermore, the very terms of the notes upon which defendant Goss was an endorser provided that the holder of the note would not be obligated to sell any of the property unless directed in writing so to do. This is a valid provision and binding upon the parties. Schram v. Brooks, D.C.Mich., 41 F.Supp. 874. There is no evidence in the record that Goss gave such a notice in writing to the plaintiff.[6]

---

4. See also Droege v. Hoagland State Bank, 86 Ind.App. 236, 156 N.E. 592; May v. Reed, 125 Ind. 199, 25 N.E. 216. This rule of law has not been changed by the adoption in Indiana of the Uniform Negotiable Instruments Act. See U. L. A. Secs. 120 and 196; Burns' Ind.Stat., Ann. §§ 19–802 and 19–1807.

5. This alone is sufficient to avoid discharge of the surety or endorser. See Agricultural Credit Ass'n v. Iaccuzzo, 167 La. 230, 119 So. 31; Union Trust Co. v. Marsh, 263 Mass. 514, 161 N.E. 611.

6. See Burns' Ind.Stat.Ann. § 3–2501. "Notice to creditor.—Any person bound as surety upon any contract in writing for the payment of money * * *, when the right of action has accrued, may require, by notice in writing, the creditor * * * forthwith to institute an action upon the contract."

This section "authorizes an arbitrary abridgement of the common-law right of the creditor * * * to extend such indulgence as he might choose to extend to his debtor * * *. [T]herefore, * * * all parties interested must rely upon the express terms of the section * * *, where relief under it is sought to be obtained." Scales v. Cox, 106 Ind. 261, 6 N.E. 622, 623; Barnes v. Mowry, 129 Ind. 568, 28 N.E. 535.

■ Coming now to the contention that the endorser is not liable for the 8 per cent interest or attorney fees, we must again look to the Indiana law. The Illinois courts will give full effect to the interest rate provided for in a note higher than permitted by the Illinois law, when that interest rate is authorized by statute in the jurisdiction where the payment is to be made. George v. Haas, supra. The Indiana Statute specifically provides for interest rates not to exceed 8 per cent.[7] An endorser is liable for attorney fees when a suit is brought on notes providing for attorney fees. Hubbard v. Harrison, 38 Ind. 323; First National Bank of Martinsville v. Canatsey, 34 Ind. 149.[8]

The judgment of the district court is Affirmed.

---

7. Burns' Ind.Stat.Ann. § 19-2001.

8. See The Provision for Attorney's Fees

In Negotiable Instruments, 17 Notre Dame Lawyer, Jan. 1942, p. 81 et seq.