AMERICAN STATES INSURANCE CO. *v.* FLOYD I. STAUB, INC.

[No. 1-576A82. Filed December 29, 1977. Rehearing denied February 2, 1978. Transfer denied May 15, 1978.]

---

*Daniel F. Hewins, Iglehart, Hewins & Songer*, of Evansville, for appellant.

*Howard P. Trockman, James F. Flynn, Trockman & Flynn*, of Evansville, for appellee.

LYBROOK, J.—Defendant-appellant American States Insurance Company (Surety) appeals from a judgment finding it liable under a construction bond to plaintiff-appellee Floyd I. Staub, Inc.,

(Staub, Inc.), a subcontractor on a sanitary sewer project for the City of Evansville.

We affirm.

In January, 1974, United Design and Construction Corporation entered into a contract with the City of Evansville for the installation of a sanitary sewer system for Mesker Zoo. In connection therewith, United Design as principal executed a bond with American States Insurance Company was surety, in the sum of $85,860.94 in which the City was the obligee. Floyd I. Staub, Inc. subcontracted with United Design to provide labor and equipment for excavation and hauling for the sewer project. The subcontractor began work in February, 1974, and completed work on about June 18, 1974. Its billing in the amount of $6,095.25 had not been paid by September of that year. Prior to September 26, 1974, an authorized officer or employee of Staub, Inc. notified the Board of Public Works that its statement for labor and materials had not been paid by United Design, though a written claim for direct payment was never filed with the Board against the City's fund pursuant to IC 1971, 5-16-5-1 *et seq.* (Burns Code Ed.).

Apparently the City was withholding contract funds from the general contractor pursuant to its contract. City was further requiring proof that all laborers and materialmen on the sewer project had been paid before it would release the retainage and pay the contractor's final billing.

Robert Staub, the principal officer and manager of the affairs of Staub, Inc., was told by a representative of United Design that there was not enough money in the City's fund to pay all of the subcontractors on the project. Robert Staub would not sign the contractor's waiver and release of lien against the City unless he was assured of full payment. On September 26, 1974, Robert Schu, for United Design, executed a note in the amount of $3500 which was given to Staub, Inc. along with a letter acknowledging that the note was secured by a certain parcel of land. The same day Gary Staub, brother of Robert Staub, and treasurer of Staub, Inc., in return for part payment and the said secured note, signed the waiver and release of lien[1] which stated:

---

1. In view of the fact that mechanics liens may not attach to public building projects, the parties appear to be referring to the statutory provision for filing a claim against the City's retainage fund (discussed infra).

"In consideration of the release, the undersigned does hereby waive, release, and quit-claim in favor of the City of Evansville, Board of Public Works for work performed for the general contractor, United Design & Construction Corporation, its successors and assigns, all leins [sic] and all rights to leins [sic] that the undersigned, by virtue of the laws of the State of Indiana, or any other jurisdiction, has or may have now or hereafter have upon the following described project or any part thereof for the project referred to as the Mesker Zoo Sanitary Sewer Project located in Vanderburgh County, Indiana.

The undersigned does further warrant that he has not and will not assign his claim for payment nor his lein [sic] for or right to perfect a lein [sic] against said construction project, and he has the right to execute this waiver and release thereof.

This waiver and release of lein [sic] shall apply to all work done or material or equipment furnished or used upon or for the benefit of said construction project on or before the 26 day of Sept. 1974."

On September 18, 1974, United Design submitted its final billing in the amount of $37,388.26, which included an itemized list showing Staub, Inc.'s total statement of $6,095.25. On October 11, Robert Schu presented the City with executed checks made to the order of all the subcontractors as proof of payment along with the waiver forms. Immediately after receiving payment from the City the checks were mailed.

Staub, Inc. did not receive the $3500 balance of its account, and following the filing of bankruptcy proceedings by the contractor, it initiated this action against the Surety. The Surety had no knowledge of the arrangement between the prime contractor and subcontractor and did not give its consent to any such arrangement.

On March 24, 1975, the subcontractor filed its complaint on the surety bond to recover the value of labor and equipment furnished to the general contractor on the sewer project. The trial court found in favor of the subcontractor.

## ISSUES

I. Whether the surety on a contractor's bond is discharged from liability to an unpaid subcontractor who did not

pursue direct payment of its account in full from funds retained by the project owner, the City.

II. Whether the surety on a contractor's bond is discharged from liability to an unpaid subcontractor who signed a "Waiver and Release of Lien" form thereby inducing the project owner to release final contract funds to the prime contractor.

III. Whether the surety on a contractor's bond is released from liability to an unpaid subcontractor who accepted a partial payment from the prime contractor in cash together with a promissory note purportedly secured by an interest in a parcel of land.

## ISSUE I.

The Surety first contends that direct payment of the subcontractor's account was available from funds retained by the City, and that the subcontractor had a duty to protect the Surety by applying directly for payment from those funds. The trial court made no special findings concerning the availability of direct payments to the subcontractors from the City. We note, however, that even if alternate means of payment were available to the creditor, Staub, Inc., the corporation was under no obligation to affirmatively pursue such sources.

In *Kimmel v. State ex rel. Anderson Banking Company* (1920), 75 Ind. App. 168, 128 N.E. 708, the Indiana Supreme Court held that a creditor was under no obligation to collect on its judgment the amount that was due from the debtor, or to make any attempt to do so. The court held that had there been an execution issued and a levy made on the property of the debtor, then the creditor would be regarded as a trustee of the execution for the benefit of all persons interested, and the creditor would not be permitted to release the levy if such release would injure the surety. *Id.* at 177.

Similarly, a creditor who holds collateral security from the principal debtor is charged with a trust concerning the property for the benefit of the surety. *Crim v. Fleming* (1884), 101 Ind. 154; *Southern Surety Co. v. Merchants' & Farmers' Bank* (1931), 203 Ind. 173, 176 N.E. 846. In support of the doc-

trine that such a trust is not violated upon evidence that the creditor merely remained passive upon default of the debtor, the court in *Crim* wrote:

> " 'In the absence of an express agreement to use diligence, or of such special circumstances as to render prompt action of the creditor an absolute duty, the mere inaction or passive delay, or omission of the creditor to enforce the collection of collateral securities held by him from the principal debtor, is not sufficient of itself to discharge or release a surety from his obligation to pay the debt upon default.' "

*Crim, supra,* at 158, (quoting Colebrooke Collateral Securities, § 241). In *Indiana National Bank of Indianapolis v. Goss,* 208 F.2d 619 (7th Cir. 1953), the Seventh Circuit Court followed this doctrine, at page 622:

> "The Indiana courts have definitely held that mere passiveness of a creditor in the collection of his debt from collateral securities held by him is not sufficient ground for discharging the surety or endorser. *Philbrooks v. McEwen,* 29 Ind. 347, *Vance v. English,* 78 Ind. 80, *Hunter v. First National Bank,* 172 Ind. 62, 87 N.E. 734, *Brown v. Nichols, Shepard & Co.,* 123 Ind. 492, 24 N.E. 339, *Wasson v. Hodshire* 108 Ind. 26, 8 N.E. 621."

In the case at bar, the funds of the City were not held by the creditor, Staub, Inc., upon an execution and levy, nor as collateral security. The creditor, Staub, Inc., could hold only such rights or interest in the City's funds as were granted by agreement between the parties. *Owen County State Bank v. Guard* (1940), 217 Ind. 75, 26 N.E.2d 395, 398. The evidence most favorable to Staub, Inc., the appellee, as in *Owen,* falls far short of showing a pledge by the City of the fund as collateral security. Gary Staub, the party who signed the waiver and release of lien form, testified that he understood that there was no way the City could pay the subcontractor directly. Staub, Inc. did not hold or obtain possession of the City's funds and there was no security agreement to establish a security interest in the fund.

Since Staub, Inc. did not hold the City's funds upon a levy or as a security interest it is not chargeable with a trust concerning them and it cannot be considered able to affirmatively act to

release or surrender the funds as if they were securities which, under the general rule, would discharge the surety to the extent of value released. *Crim, supra; Wasson v. Hodshire* (1886), 108 Ind. 26, 8 N.E. 621.

Even had we not found that the funds of the City should not be considered collateral security, there was no duty imposed upon Staub, the creditor, by express agreement or by special circumstances, which would mandate an absolute duty to collect the City's funds. We hold that the mere inaction of Staub, Inc. to perfect a "lien"[2] on the City's funds is not sufficient to discharge the surety from its liability to pay the debts incurred by the principal debtor.

## ISSUE II.

The Surety next contends that it is discharged from liability on the contractor's bond because of the "waiver and release of lien" form signed by Staub's representative, which thereby induced the City to release final contract funds to the prime contractor.

Under IC 1971, 5-16-5-1 (Burns Code Ed.) and its contract with United Design, the City had the right to require evidence to be presented that United Design had paid all laborers, material suppliers and subcontractors furnishing labor or materials if it made final payment within thirty days after acceptance of the work.[3] Because the contractor could not afford to pay the subcontractors

---

2. The surety contends that representatives of Staub, Inc. failed to perfect a "lien" on the City's retainage fund. A lien is defined as a claim which one person holds on the property of another as a security for an indebtedness or charge. *Hubble v. Berry* (1913), 180 Ind. 513, 103 N.E. 328. It is a liability *in rem.* Such liens against public buildings, works or improvements are not recognized in Indiana. *See, Repp and Mundt, Inc. v. Hitzelberger Supply Co.* (1976), 170 Ind. App. 539, 353 N.E.2d 547. The parties apparently use "lien" in reference to Staub, Inc.'s privilege to file its statement with the City for payment of a prorated amount from the City's retainage fund when there is not a sufficient sum owing to the contractor on its contract with the city to pay all such bills. IC 1971, 5-16-5-1 (Burns Code Ed.). The term "lien" has been used in the context of this statute and will be similarly recognized for purposes of this opinion, without comment as to its applicability. *MacDonald v. Calumet Supply Co.* (1939), 215 Ind. 536, 19 N.E.2d 567, on petition for rehearing, 215 Ind. 536, 21 N.E.2d 400.

3. On September 18, 1974, United Design submitted its final billing to the City, and on October 11, 1974, the full amount was paid by the City to United Design.

and materialmen prior to receiving payment from the City, the parties agreed that checks would be drawn up in amounts sufficient to pay the subcontractors and materialmen and these would be mailed from the bank upon receipt of the funds from the City. As part of the arrangement, the City requested and received release and waiver of lien forms signed by the subcontractors.

The City was already protected from a lien against its retainage by Staub, Inc. because the limitation of sixty days since completion of the subcontractor's work, for filing such claims, had passed. IC 1971, 5-16-5-2 (Burns Code Ed.).

The subcontractor, however, is not prevented from suing the principal or surety on the bond merely because he did not exercise the privilege given him to proceed against the City to impound the money due the contractor. IC 1971, 5-16-5-1 *et seq.* (Burns Code Ed.). *Aetna Casualty and Surety Co. v. George L. Mesker Steel Corp.* (1967), 140 Ind. App. 400, 223 N.E.2d 768.

" 'There is nothing in the statute, nor in the contract for the performance of which the bond was given, which made it obligatory on the relator to file its claim with the board of commissioners, either for its own benefit or for the protection of the surety on the bond. Since the procedure provided by the statute is a mere privilege, of which the relator might have availed itself at its option, appellant cannot escape liability merely because the relator did not intercept the contractor's pay and apply it on the claim.' " *Concrete Steel Co. v. Metropolitan Casualty Insurance Co.* (1930), 95 Ind. App. 649, 173 N.E. 651 (Transfer denied 1933), quoting *Illinois Surety Co. v. State ex rel. A. and C. Stone and Lime Co.* (1919), 69 Ind. App. 450, 122 N.E. 30.

Staub, Inc. was allowed to file suit against the insurance company on this bond to recover the balance owing it for the material and labor furnished, until one year from the date of completion of the work. *Aetna Casualty, supra.*

Since the City was already protected from a lien against its retainage by the statute's limitation, a waiver of that right has no effect on the liability of the Surety.

The Surety cites several cases as authority for the proposition that the execution of the waiver and release of lien form estops or acts as a waiver of any claim against a surety by the subcontractor for payment.

In *Kansas City Marble & Tile Co. v. Penker Construction Co.* (4th Cir. 1936), 86 F.2d 287, a petitioner sought to recover from the general contractor and its bondsman for the value of materials furnished to a subcontractor in the construction of a public building. In order to obtain payment from the general contractor, the petitioner executed a " 'Complete Waiver of Lien,' in which it waived and released 'any and all liens, claims and right to lien for any and all work, labor, and material by themselves furnished or which may be furnished in and about said premises.' " The case was affirmed on procedural grounds, but in dicta the court construed the waiver as embracing "claims under the bond" as well as the nonexistent "liens".

The facts in that case are distinguishable from those in the case at bar. The waiver expressly released "any and all ... *claims* ..." (emphasis added) for work and material. This was construed to mean claims against the bond where the waiver was addressed to the principal debtor under the bond. In the case at bar the release of a nonexistent lien against the City does not affect claims against the principal or Surety under the bond.

In *Pittsburgh Steel Co. v. Standard Accident Ins. Co.* (E.D.S. Car. 1944), 55 F. Supp. 36, the plaintiff who supplied materials to a subcontractor executed a release of lien for the purpose of enabling the subcontractor to collect the balance of money owing under the contract to them by the general contractor, which release was required by the general contractor. The Court noticed that the affidavit in the release was particularly pertinent to the plaintiff's cause of action. The affiant said that "all *claims* for labor employed and/or materials furnished ... mentioned and referred to in the release of which this affidavit is a part, have been paid in full." *Id.* at 37, (emphasis added). The court found that in reliance on this falsely sworn receipt of payment in full, the contractor

was induced to release thousands of dollars of retained percentages to the subcontractors. Central to that court's opinion was the finding that it was a fraudulent and false affidavit which induced the contractor to transfer the funds before the materialman was actually paid. Such transfer was therefore premature under the terms of the contract. The agreement changed the terms of the contract to the detriment of the surety, and further, the surety was deprived of its right to subrogate a claim against the contractor because he had been released.

In the case at bar there was no fraudulent representation that the subcontractors had been paid. Mr. Schu gave to the president of the Board of Public Works (who signed the payment voucher), checks which were made out to the subcontractors and together they mailed them, immediately after receiving the payment from the City. Under United Design's contract with the City of Evansville, the Board of Public Works could pay the final bill early "upon acceptable evidence being presented to the Board that the Contractor has paid all laborers, material suppliers and subcontractors furnishing labor or material hereunder." The executed checks accompanied by the waiver and release of lien forms were required by the Board as acceptable evidence. There was therefore no change in the contract, and no fraudulent inducement by Staub, Inc. for the City to act.

A surety is entitled to a right of subrogation to any rights in collateral that the creditor obtains from the principal debtor. *White v. Household Finance Corp.* (1973),158 Ind. App. 394, 302 N.E.2d 828, 834; *Pittsburgh Steel Co., supra.* The defendant surety here lost no right of subrogation against the City because of the waiver and release of lien. No right to the City's fund is lost when the evidence shows that all the money held by the City for this project was indeed paid to the principal by the City for the project.

The Surety also mentions *Crane Co. v. James McHugh Sons, Inc.* 108 F.2d 55, (10th Cir. 1939), and *Wisconsin Electric Sales Co. v. Fidelity & Deposit Co.* (1927), 191 Wis. 645, 211 N.W. 670. In the first case the decision to discharge the surety resulted from an

agreement by the materialman to release the principal from liability and a pledge to hold the subcontractor responsible for payment. Since the agreement was supported by consideration, it estopped the materialman from claiming payment under the bond. There was no agreement in the case at bar to release the principal under the bond. *Wisconsin Electric* deals with a false receipt for payment which did not occur in the present case.

## ISSUE III.

Finally, the Surety contends that it was released from liability under the contractor's bond when the unpaid subcontractor accepted a substantial partial payment in cash from the prime contractor together with a promissory note purportedly secured by an interest in a parcel of land. We agree with the trial court that the note and the security accepted by Staub, Inc. in no way varied the terms of the contract, but were taken merely as additional security on the original obligation.

A section of the Indiana Commercial Code states the rule for determining when the underlying obligation is discharged when a negotiable instrument such as the instant note is given and received for the underlying obligation. Subsection (1)(b) of IC 1971, 26-1-3-802 (Burns Code Ed.) provides:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation

\* \* \*

(b) ... the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation."

By accepting the note, the creditor did not discharge the principal debtor, but the obligation was merely suspended pro tanto until the instrument was due.

This rule is applicable "unless otherwise agreed." The agreement may be a "bargain of the parties in fact as found in their

language or by implication from other circumstances." IC 1971, 26-1-1-201(3) (Burns Code Ed.). Schu and Staub agreed and intended that the note would not be accepted in discharge of the obligation to pay the balance owed, but was to be accepted only as evidence of it, and that the obligation would become due when the note matured. The evidence presented is sufficient to show that the note and security interest in the land were not taken in discharge of the underlying obligation. *See, Born v. Lafayette Auto Co.* (1924), 196 Ind. 399, 145 N.E. 833; J.J. White & R.S. Summers, Handbook of the Law Under the Uniform Commercial Code (1972), pg. 448-450.

The above statutes, however, do not affect case law concerning the liability of the surety when a note is negotiated without its knowledge or consent.

It is the general rule that when the parties cause a material alteration of the contract without the knowledge and consent of the surety, the surety is released, regardless whether the change was to his injury or benefit, for the reason that it is no longer his contract. *Indiana Telco Federal Credit Union v. Young* (1973), 156 Ind. App. 483, 297 N.E.2d 434, and cases cited therein.

In the case at bar neither the contract nor the bond fixed the maturity date for the principal's obligation, nor was the manner of payment stipulated. The parties contemplated that payment under the prime and subcontracts would be dispensed as the work progressed with the amount of payment based upon the materials and labor actually used.

In this situation, which is characteristic of many construction bond contracts, the bond was a floating or continuing guaranty. Here, where there was no agreement as to the manner of payment, no contract terms are altered by the creditor's later agreement to accept part of the payment in cash and a secured note to evidence a debt for the balance of the payment. *Foster v. Gaston* (1889), 123 Ind. 96, 23 N.E. 1092; *State ex rel. Hughes v. Adams* (1918), 187 Ind. 165, 118 N.E. 680.

The instant agreement is distinguishable from a case relied on

by the Surety, wherein the creditor altered the specific terms of a loan by accepting lesser payments and extending the final payment date. *Indiana Telco Federal Credit Union v. Young, supra.*

Also distinguishable is *Lutz v. Frick Co.* (1962), 242 Ind. 599, 181 N.E.2d 14, wherein the creditor agreed to compromise and accept part payment as settlement in full of its claim against the bankrupt debtor. The general rule that a surety is discharged when the liability of its principal is extinguished was applied. The liability of the principal in the instant case was never extinguished and the security and note were demanded to assure this. Similarly in *Cook v. American States Insurance Co.* (1971), 150 Ind. App. 88, 275 N.E.2d 832, the principal debtor deeded the mortgaged property to the assignee of the mortgagee, which was accepted by the assignee as payment of the mortgage debt. Settlement of the claim between the debtor and creditor extinguished any liability of the surety.

The fact is clearly established that it was the intention of the parties that the note signed by United Design was taken as evidence of the debt owed and as additional assurance of its payment. *See, Kimmel v. State, ex rel. Anderson Banking Co.* (1920), 75 Ind. App. 168, 128 N.E. 708. Robert Staub testified in his deposition as to the purpose of the promissory note: "I had to have some assurance for my money until he could get it from the City." Gary Staub testified that they were to hold the note for ninety days and then receive payment. Robert Staub further testified that Mr. Schu, the representative of United Design, put up the parcel of land as security after Staub refused to sign the waiver before being paid. Staub testified that neither party intended the land to be payment nor intended to collect on it.

Having found no alteration of the obligations under the contract and no payment settlement we hold that there was no novation, and therefore the Surety is not released from its bond obligation. *See, Pittsburgh Steel Co. v. Standard Accident Ins. Co.* (E.D.S. Car. 1944), 55 F. Supp. 36.

## Decision

This suit is brought on the construction bond under which the

appellant surety is liable for payment on default of the principal of "all debts incurred by [the principal] or any subcontractor in the prosecution of said work, including labor, service and materials furnished." United Design, the principal, has not paid Staub, Inc. the balance of the payment owed for its labor and equipment contributed to the municipal sewer project.

We have found above that Staub, Inc. was under no duty to impound the City's retainage fund, that this subcontractor has a right of action on the bond, that the waiver addressed to the City is not a waiver of claims against the principal or Surety, and that acceptance of the note and security as evidence of the remaining payment did not alter the contract or discharge the Surety.

Finding no basis for fraud, estoppel, waiver, or novation, we affirm the trial court's decision.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 370 N.E.2d 989.