INDIANA TELCO FEDERAL CREDIT UNION *v.* ROBERT L. YOUNG.

[No. 1-1072A84. Filed June 25, 1973.]

*Lawrence H. Hinds, Frederick J. Graf, Martz, Beattey, Hinds & Wallace,* of Indianapolis, for appellant.

*Ronald C. Smith, Smith & Mills,* of Indianapolis, for appellee.

LYBROOK, J.—Appellant (Telco) brought this action against Young, a surety, upon a promissory note executed to Telco by Richard Milton.

The evidence most favorable to the appellee shows that on January 27, 1969, the note was executed in the sum of $3,255.00. Milton pledged $700.00 of his savings account with Telco as collateral on the loan. Repayment was to be made by semi-monthly payroll deductions of $75.00 each. Milton's wife as well as Young, co-signed the note. Young and the Miltons were all employees of Indiana Bell and members of Telco.

Milton left his employment on May 23, 1969, and Telco received the last payroll deduction on June 4, 1969. Later that month Young contacted Telco about the loan and was told "that the account was current and no problems." It was not until December 12, 1969, that Young was informed "that due to an IBM mixup they found that Mr. Milton's account hadn't been being paid and that it was delinquent and that he was going to have some makeup payments to make . . ." During this period, Telco had made withdrawals from Milton's savings account to make the loan payments as they came due. During the same period Telco allowed Mrs. Milton to make withdrawals from her own small savings account.

After Milton's account was virtually exhausted, Telco made withdrawals in the amount of $671.81 from Young's account, without his knowledge or authorization, and applied them as payments on the note. Telco's bylaws authorized it to freeze Young's account but did not authorize withdrawals therefrom. Young did not discover these withdrawals until he attempted

to make a withdrawal and found he had a very small balance left.

Young testified that pressure was put on him by Indiana Bell executives to pay the remaining balance due on the note.

The evidence also showed that Telco had contacted Milton in Texas, demanding payment of the entire balance due. Milton offered to pay $138.00 per month and Telco accepted and sent him a payment book with $138.00 scheduled monthly payments. Milton later made five payments on the loan, reducing the balance to $1406.12. He then declared bankruptcy.

Upon this evidence, the trial court found:

> ". . . that the principal was in default on payments on note in question in June, 1969, when he quit making payments thereon; that the plaintiff's release of funds to co-surety, Glenda R. Milton, and the use of principal's pledge to make payments on note, constituted a waiver of liability as to surety Robert L. Young; and that plaintiff recover nothing on its cause of action herein as against defendant Robert L. Young."

There are several conflicting characterizations of the issues by the parties, even within a given brief. However, we will discuss only those issues which were presented by the Motion to Correct Errors and also argued in appellant's brief, the remainder having been waived pursuant to AP. 8.3.

The threshold issue is whether the trial court correctly found that the note was in default in June when Milton stopped making payments, rather than in December when the collateral was exhausted.

It has long been the law in Indiana that a surety is a favorite of the law and that he must be dealt with in the utmost good faith. *State ex rel. Hughes* v. *Adams* (1918), 187 Ind. 165, 118 N.E. 680. It is also well established that a creditor's failure to notify a surety of a debtor's misconduct discharges the surety. *Indiana & Ohio Live Stock Ins. Co.* v. *Bender* (1904), 32 Ind. App. 287, 69 N.E. 691.

In the case at bar, it is obvious that while Telco was making

the required payments for Milton from his pledged savings account, *Milton* was not making the payments.

Telco contends it had no knowledge that Milton was not making the payments since the list of payroll deductions from Bell did not specifically state that payroll deductions had ceased. This argument is without merit. The very fact that no payroll deduction for Milton appeared on the list was notice to Telco that no payroll deduction was made.

Telco further maintains that the note was not in default in June due to the following provision: "In case of any default in payments as herein agreed, the entire balance of this note shall become immediately due and payable, at the option of the holder." Telco contends that this provision allows it to determine the date of default as it chooses. It was for the court to determine when the default occurred and in the case at bar he correctly determined it to be "June, 1969, when he [Milton] quit making payments thereon."

We must next determine whether Young, as a surety, was discharged by Telco's agreement to accept payment terms different from those required by the note.

The evidence showed that Telco altered the terms of the loan by accepting Milton's offer to make smaller payments. They had even sent him a coupon book providing for the smaller payments.

As Telco's own credit union manager testified:

"We received a letter from Mr. Milton on January the 13th, and he said that he just could not pay it in full by the deadline set, but said he would pay One Hundred and Thirty Eight Dollars each month."

"Q. Alright. And then your correspondence with him back was to the affect [sic] that, ah, alright, we'll accept the hundred and thirty eight dollars a month?

"A. Yes. On February the 2nd, since he promised to pay monthly, we did mail him a payment book, scheduled payments for One Hundred and Thirty Eight Dollars each month."

Young testified that he was unaware of this new arrangement and had not consented thereto.

Indiana courts have long held that when a principal alters the terms of the contract without the consent of the surety, the surety is discharged, even if the alteration is to the benefit of the surety. See *Hubbard* v. *Reilly* (1912), 51 Ind. App. 19, 98 N.E. 886; *Detroit Fidelity & Surety Co.* v. *Bushong* (1931), 96 Ind. App. 352, 175 N.E. 683; and *Stayner* v. *Joice* (1882), 82 Ind. 35.

Telco also asserts error in the trial court's holdings that: (1) Young was discharged by Telco's application of Milton's collateral to the loan, and (2) Young was discharged by Telco's release of Mrs. Milton's funds. Telco further maintains that even if the latter were correct, the discharge would be *pro tanto* only.

In light of our holding that Milton was in default in June and that Telco discharged Young by altering the contract without Young's consent, we need not discuss these assertions.

Pursuant to AP. 15(M) we hereby direct the trial court to enter final judgment as follows: That defendant Robert L. Young as surety was discharged by plaintiff's alteration of the repayment terms of the note without Young's consent, that plaintiff recover nothing in this action against defendant Robert L. Young, that plaintiff be and it is hereby ordered to return to defendant Young any and all monies taken by plaintiff from Young's savings account and applied to Milton's note, together with interest thereon and to release said funds to him *instanter;* and that plaintiff pay the costs of this action.

Judgment affirmed as modified.

Robertson, P.J., and Lowdermilk, J., concur.

NOTE.—Reported at 297 N.E.2d 434.