

**FILED**

Jul 28 2015, 9:08 am

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Ronald L. Cross
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

ATTORNEY FOR APPELLEE

Ray A. Cox
Dayton, Ohio

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| First Federal Bank of the Midwest, <br><br> *Appellant*, <br><br> v. <br><br> Karen S. Greenwalt and <br> Farm Credit Services of Mid-America, FLCA, <br><br> *Appellees*. | July 28, 2015 <br><br> Court of Appeals Case No. 21A01-1408-MF-344 <br><br> Appeal from the Fayette Superior Court <br><br> The Honorable Ronald T. Urdal, Judge <br><br> Cause No. 21D01-1108-MF-621 |

**Brown, Judge.**

First Federal Bank of the Midwest ("First Federal") appeals the trial court's order entering partial summary judgment in favor of Karen Greenwalt ("Greenwalt") and dismissing its complaint.[1]  First Federal raises two issues which we consolidate and restate as whether the trial court erred in granting summary judgment in favor of Greenwalt.  We affirm.

## Facts and Procedural History

On February 22, 2000, David Greenwalt ("David"), then husband of Karen Greenwalt, as president and sole owner of Great Lakes Ag. Supply, Inc. ("Great Lakes") executed a promissory note (the "Note") on behalf of Great Lakes, the maker of the Note, in favor of First Federal.  The Note established a revolving line of credit up to a maximum principal amount of $300,000 and provided that Great Lakes was required to make interest only payments until maturity of the Note, upon which the outstanding principal would become due and payable in a single balloon payment.  David executed a personal guaranty of the debt under the Note.

As partial security for the Note, Greenwalt and David (referred to in the Mortgage together as "Grantor") contemporaneously executed a mortgage (the "Mortgage") granting First Federal a security interest in two parcels of land owned by the couple: a 121.110-acre parcel ("Tract One") and a 40.00-acre parcel

---

[1] In its brief, First Federal States that Farm Credit Services of Mid-America, FLCA ("FCS"), holds a first mortgage lien on the property owned by Greenwalt, that First Federal does not dispute the superiority of FCS's lien, and that therefore, FCS did not participate in the partial summary judgment proceedings giving rise to this appeal.  FCS did not submit a brief in this case.

("Tract Two").[2]  The Mortgage provided that "[t]he lien of this Mortgage shall not exceed at any one time $300,000.00."  Appellant's Appendix at 17.  The Mortgage provided in part:

> **REVOLVING LINE OF CREDIT.** Specifically, in addition to the amounts specified in the Indebtedness definition, and without limitation, this Mortgage secures a revolving line of credit, under which Lender may make future obligations and advances to Borrower up to a maximum amount $300000.00 so long as Borrower complies with all the terms of the Note.  Such future obligations and advances, and the interest thereon, are secured by this Mortgage whether such obligations and advances arise under the Note, this Mortgage or otherwise.  This Mortgage also secures all modifications, extensions and renewals of the Note, the Mortgage or any other amounts expended by Lender on Grantor's behalf as provided for in the Mortgage.

*Id*.  "Indebtedness" is defined in the Mortgage as:

> [A]ll principal, interest, and other amounts, costs, and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, including, but not limited to, attorneys' fees, costs of collection and costs of foreclosure, together with interest on such amounts as provided in this Mortgage.

*Id*. at 25.

---

[2] The parties dispute whether Greenwalt signed the Mortgage.  However, for purposes of the motions for partial summary judgment, they agreed that execution of the Mortgage by Greenwalt would be assumed.

[4] In August 2000, Greenwalt and David divorced and, as part of the divorce settlement approved by the court, Greenwalt was awarded Tract One and David was awarded Tract Two.

[5] In the years after the Note and Mortgage were executed, Great Lakes executed renewal notes on a regular basis, which were comprised of separate promissory documents setting forth all of the terms of Great Lakes' promises to repay the loans extended under the line of credit, and were executed in substitution of the original note. Greenwalt was not notified of any of the renewals of the Note.

[6] In 2002, the Note was renewed in the principal amount of $300,000, and at the time the unpaid principal amount outstanding under the Note was $294,307.95. At this time, First Federal also extended to Great Lakes an "additional 'over line' credit facility . . . in the principal amount of $100,000.00." *Id.* at 41.

[7] The Note was again renewed in 2003 in the principal amount of $300,000, at which time the unpaid principal amount was $294,507.95. By that time, the entirety of the $100,000 "over line" credit facility had been fully disbursed. *Id.* First Federal also consolidated several other extensions of credit made to Great Lakes into a single term loan in the principal sum of $61,600.

[8] In 2004, the Note was renewed again in the principal amount of $300,000 while the unpaid principal amount then outstanding under the Note was $294,507.95. Also in 2004, the "over line" credit facility and the existing term loan were consolidated into a single term note in the principal amount of $161,600, and thus

the total outstanding debt owed to First Federal by Great Lakes at that time was $456,117.95.

[9] In 2007, David sold Tract Two for a total of $110,000 with proceeds after costs being $109,400. First Federal received all of those proceeds and applied the bulk of those funds to the single term note, resulting in the retirement of that note.

[10] The Note was renewed on a near-annual basis until the final renewal that occurred on or about December 14, 2009. As part of one of the renewals of the Note, the revolving line of credit was converted into a "closed end LOC," which eliminated Great Lakes' ability to draw on the Note for additional funds.[3] *Id.* at 90. Under the final renewal note executed by Great Lakes on December 14, 2009, in the principal amount of $172,583.36, Great Lakes was required to make payments of principal in the amount of $2,000 together with accrued interest each month for thirty-five months and a final payment of $103,025.04 by the Note's maturity date of November 30, 2012.

[11] On or about May 25, 2011, David filed for relief under Chapter 7 of the United States Bankruptcy Code in the Northern District of Ohio and received a discharge on or about September 15, 2011. During the bankruptcy proceedings, First Federal liquidated all collateral known to exist that secured the Great Lakes credit

---

[3] The record does not reveal when the revolving line of credit under the Note was converted into a closed-end line of credit. However, in its brief, First Federal states that "upon the occasion of [the 2007] renewal of the Note, it was converted to closed end line of credit whereby Great Lakes was not permitted to pay down and then re-borrower [sic] monies under the Note . . . ." Appellant's Brief at 18.

facilities, with the exception of Tract One, and applied all proceeds from the liquidation in either "a manner consistent with the direction of David Greenwalt" or, if it received no specific direction, in a manner of its own choosing. *Id*. at 43.

[12] On August 18, 2011, First Federal filed a complaint seeking to foreclose any interest it had in Tract One pursuant to the Mortgage. The complaint alleged that "Great Lakes failed to pay the monthly installments of principal and accrued interest as scheduled, and as a result thereof, [First Federal] has declared a default pursuant to the terms of the Note and the Mortgage," and thus that First Federal was entitled to a decree of foreclosure with respect to Tract One to recover the outstanding balance due under the Note of $154,867.24. *Id.* at 12. In her answer, Greenwalt denied that Tract One was subject to the Mortgage.

[13] On November 15, 2013, First Federal filed a motion for partial summary judgment on the issue of discharge due to alleged material modification of the guaranteed indebtedness together with designated evidence and a memorandum in support of its motion. In its motion for partial summary judgment, First Federal argued that there was no material alteration of the underlying indebtedness that would have discharged Tract One from the Mortgage lien.

[14] On December 19, 2013, Greenwalt filed a memorandum in opposition to First Federal's motion for partial summary judgment and cross-motion for partial summary judgment with affidavits and other designated evidence in support of her motion. In her memorandum, Greenwalt argued in part that First Federal authorized, without notice, an unapproved alteration of the original Note and

Mortgage. The parties limited their motions for partial summary judgment to the issue of whether Tract One had been discharged from the lien under the Mortgage due to the manner in which First Federal serviced the Great Lakes credit facilities. The court held a hearing on the cross-motions for partial summary judgment on February 14, 2014.

[15]    On July 18, 2014, the court entered an order granting Greenwalt's cross-motion for partial summary judgment, denying First Federal's partial summary judgment motion, and ordering that the cause be dismissed with prejudice. The trial court concluded:

1. . . . the original line of credit promissory note limited the obligation of [Greenwalt] and the real estate in rem to $300,000.00, which the Court finds was the intention of the parties.

2. The relevant mortgage was a contract between the parties.

3. [First Federal] breached the contract by applying proceeds from the sale of [Tract Two] to unapproved obligations in excess of $300,000.00.

4. [First Federal] further breached contract by applying payments made by maker Great Lakes Ag. Supply, Inc. to other unapproved obligations.

5. Had the proceeds of the sale of [Tract Two], and other payments made, been applied to the original obligation, that original debt would have been extinguished.

6. The forging [sic] represents unapproved modifications which release the subject in rem real property from the lien of [First Federal].

*Id.* at 9.

## *Discussion*

[16] The issue is whether the trial court erred in granting Greenwalt's cross-motion for partial summary judgment. In Indiana, the procedure and standard by which appellate courts review challenges of a trial court's granting or denying summary judgment is clear. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). "Our standard of review is the same as it is for the trial court." *Id.* (citing *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4 (Ind. 2010)). "The moving party 'bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.'" *Id.* (quoting *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012)). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the non-moving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* (citing *Plonski*, 930 N.E.2d at 5). An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court, *see* Ind. Trial Rule 56(H), but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling. *Id.*; *see also Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009) ("[W]e are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather we may affirm a grant of summary judgment upon any theory supported by the evidence.").

[17] The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), *trans. denied*. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

[18] Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

[19] To the extent we must interpret the Note and Mortgage, we observe that interpretation of a contract is a pure question of law and is reviewed de novo. *Lilly, Inc. v. Silco, Inc.*, 997 N.E.2d 1055, 1064 (Ind. Ct. App. 2013) (citing *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005)), *reh'g denied*, *trans. denied*; *see also Coleman v. Witherspoon*, 76 Ind. 285, 287 (1881) ("A mortgage is a contract . . . ."). If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Lilly, Inc.*, 997 N.E.2d at 1064. Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. *Id.* We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* When a summary judgment ruling is based upon the construction of a written contract, the trial court has either determined as a matter

of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.* at 1064-1065 (citing *Pinkowski v. Calumet Twp. of Lake Cnty.*, 852 N.E.2d 971, 981 (Ind. Ct. App. 2006), *trans. denied*).

[20] At the outset, we observe that the Indiana Supreme Court has held that "[o]ne who, with the knowledge of the creditor, furnishes collateral to secure the loan of another stands in the relation of surety to the debtor . . . ." *Owen Cnty. State Bank v. Guard*, 217 Ind. 75, 84, 26 N.E.2d 395, 398-399 (1940). We have also concluded that a person who mortgages her land to secure another's debt is a surety. *SPCP Grp., LLC v. Dolson, Inc.*, 934 N.E.2d 771, 776 (Ind. Ct. App. 2010) ("Holland, because she agreed to mortgage her Real Estate as security for the debt of others, agreed to act as a surety."); *Merchant's Nat'l Bank & Trust Co. of Indianapolis v. Lewark*, 503 N.E.2d 415, 416 (Ind. Ct. App. 1987) (treating the mortgagor as a surety where the mortgage secured a third-party's debt), *reh'g denied*, *trans. denied*. Additionally, the Indiana Supreme Court has held that a guarantor is not distinguishable from a surety. *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 66 (Ind. 1995). Accordingly, Greenwalt acted as surety for Great Lakes' indebtedness to First Federal in granting a security interest in Tract One to First Federal.

[21] "It has long been the law in Indiana that a surety is a favorite of the law and that he must be dealt with in the utmost good faith." *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 147 (Ind. Ct. App. 2004) (quoting *Ind. Telco Fed. Credit Union v. Young*, 156 Ind. App. 483, 485, 297 N.E.2d 434, 435 (1973)). The Indiana

Supreme Court has found that a surety's collateral is released "by any action of the creditor which would release a surety, such as the extension of the time of payment of the debt, the acceptance of a renewal note, or the release of other security." *Guard*, 217 Ind. At 84, 26 N.E.2d at 399 (citations omitted). Additionally, "Indiana courts have long held that when a principal alters the terms of the contract without the consent of the surety, the surety is discharged, even if the alteration is to the benefit of the surety." *Ind. Telco*, 297 N.E.2d at 436 (citations omitted); *see also Carney v. Cent. Nat'l Bank of Greencastle*, 450 N.E.2d 1034, 1036 (Ind. Ct. App. 1983) (observing that any alteration of a principal's contract releases the surety) (citing *Ind. Univ. v. Ind. Bonding & Surety Co.*, 416 N.E.2d 1275 (Ind. Ct. App. 1981)).

[22] First Federal maintains that its security interest in Tract One under the Mortgage has not been discharged and specifically asserts that there was no material alteration of the underlying loan obligation.[4] First Federal argues that the trial court erred when it determined that the extensions of additional credit to Great Lakes after the execution of the Note and Mortgage in 2000 constituted a material alteration of the underlying obligation resulting in the discharge of the Mortgage. First Federal further argues that, even if material alterations were made to the

---

[4] Because we find the issue of material alteration dispositive, we do not address First Federal's argument that the proceeds from Tract Two were not misapplied or whether, and to what extent, any misapplication would have resulted in a discharge of Greenwalt's obligation.

underlying obligation, the Mortgage was not discharged but capped at the level of the amount owed under the Note at the time of the material alteration.

[23] We have previously summarized when a surety may be released due to material alteration of the underlying obligation:

> Guarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect or impairs or suspends the remedy for its enforcement. Moreover, *when the principal and obligee cause a material alteration of the underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability.* A material alteration which will effect a discharge of the guarantor must be a change which alters the legal identity of the principal's contract, substantially increases the risk of loss to the guarantor, or places the guarantor in a different position. The change must be binding.

*Keesling v. T.E.K. Partners, LLC* (*Keesling I*), 861 N.E.2d 1246, 1251 (Ind. Ct. App. 2007) (citation and internal quotation marks omitted). In addition, this court has stated that "[a]lteration of the contract giving rise to discharge of a surety entails either a change in the physical document itself or a change in the contract between the creditor and the principal debtor which creates a different duty of performance on the part of the principal debtor than that which the surety guaranteed." *White v. Household Fin. Corp.*, 158 Ind. App. 394, 400, 302 N.E.2d 828, 832 n.3 (1973) (citing L. SIMPSON, HANDBOOK ON THE LAW OF SURETYSHIP, 330 (1950)). Thus, "[i]t is the general rule that when the parties cause a material alteration of the contract without the knowledge and consent of the surety, the surety is released, regardless whether the change was to his injury or benefit, for the reason that it is no longer his contract." *Am. States Ins. Co. v.*

*Floyd I. Staub, Inc.*, 175 Ind. App 244, 255, 370 N.E.2d 989, 996 (1977) (citing *Ind. Telco*, 297 N.E.2d 434, and cases cited therein), *reh'g denied*; *see also S-Mart, Inc. v. Sweetwater Coffee Co., Ltd.*, 744 N.E.2d 580, 586 (Ind. Ct. App. 2001), *trans. denied*.

[24] We note that Greenwalt focuses her argument on the additional extensions of credit made by First Federal and asserts those extensions violated the Mortgage and should release her surety obligation. However, we must determine whether First Federal, as the creditor, and Great Lakes, as the principal debtor, caused a material alteration of the agreement between them or of the underlying obligation of Great Lakes or caused a change in the obligation or agreement which created a different duty of performance on the part of Great Lakes.

[25] The terms of the original 2000 Note provided that Great Lakes was required to make payments of interest until maturity of the Note, at which time it was to repay the outstanding principal balance. Then, according to First Federal, as part of the 2007 renewal of the Note, the Note was converted to a "closed end LOC," thereby eliminating Great Lakes' ability to draw on the Note for additional funds. Appellant's Appendix at 90. The terms of the 2009 renewal Note provided that Great Lakes was required to make monthly payments of both principal and interest for thirty-five months followed by a large final payment.

[26] Thus, the terms of Great Lakes' debt obligation changed from one which included interest only payments on a revolving line of credit to one which consisted of monthly principal and interest payments on a closed line of credit. These alterations to the terms of Great Lakes' loan agreement "create[d] a

different duty of performance on the part of [Great Lakes] than that which [Greenwalt] guaranteed." *See White*, 158 Ind. App. at 400 n.3, 302 N.E.2d at 832 n.3. The alteration in the payment terms of the loan placed Greenwalt in a different position and substantially increased her risk of loss, as the requirement of a monthly $2,000 principal payment plus interest made it significantly more likely that Great Lakes would default on the Note prior to the Note's maturity date, and increased the probability that the collateral furnished by Greenwalt to secure Great Lakes' debt would be liquidated to satisfy Great Lakes' obligation. *See Keesling I*, 861 N.E.2d at 1251. In addition, we note that the fact that the lien of the Mortgage by its terms could not exceed $300,000 does not impact whether the changes to Great Lakes' loan terms constituted material alterations; indeed, the relevant inquiry is whether there were material alterations made in the principal debtor's underlying obligation such that it was no longer the contract which the surety agreed to guaranty. *See Floyd I. Staub, Inc.*, 175 Ind. App at 255, 370 N.E.2d at 996.

[27] To the extent First Federal argues that, even if material alterations were made to the underlying obligation, the effect of the alterations should be to limit the lien of the Mortgage at an amount equal to the outstanding principal at the time of the material alteration, it does not point to relevant authority to support its position. We have stated that a surety is exonerated when a lender and principal debtor, without the surety's consent, materially alter the debtor's obligation. *See Ind. Telco.*, 156 Ind. App at 485, 297 N.E.2d at 436 (holding that a surety is completely discharged due to material alteration of loan terms). First Federal

cites to *Keesling v. T.E.K. Partners, LLC* (*Keesling II*), 881 N.E.2d 1025 (Ind. Ct. App. 2008), and argues that the court there found that certain collateral remained encumbered by a mortgage to the extent of the outstanding principal owed at the time of a material alteration. However, in *Keesling II*, we addressed and decided the issue of discharge of collateral based upon the parties' arguments on appeal in *Keesling I* and the law of the case, and *Keesling II* does not stand for the substantive proposition asserted by First Federal.

[28] Based upon the record, we conclude that the alteration of the loan terms between Great Lakes and First Federal constituted material alterations of the underlying obligation and the loan agreement guaranteed by Greenwalt and that, as a result, Greenwalt as a surety and Tract One were discharged. *See Keesling I*, 861 N.E.2d at 1254-1255 (holding that a second note, which in part capitalized interest due on the original note, constituted a material alteration of the original obligation and that, as such, the guarantor or surety was discharged); *Ind. Telco*, 297 N.E.2d at 435-436 (holding that the lender altered the terms of a loan made to the borrower by agreeing to accept smaller payments and that the surety was discharged by the alteration of the repayment terms of the note without the surety's consent); *First Citizens Bank v. Sullivan*, 200 P.3d 39, 44-45 (Mont. 2008) (finding that, even where the surety authorized the bank to "alter, compromise, renew, extend, accelerate, or otherwise change . . . the time for payment or other terms of the indebtedness," evidence of the conversion of a revolving line-of-credit to an installment loan with fifty-nine monthly payments with a final balloon payment was sufficient to exonerate the surety).

## Conclusion

[29] For the foregoing reasons, we affirm the trial court's grant of Greenwalt's cross-motion for summary judgment and the dismissal of First Federal's foreclosure action with prejudice.

[30] Affirmed.

Crone, J., and Pyle, J., concur.