## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 08 2017, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John J. Schwarz, II
Hudson, Indiana

ATTORNEYS FOR APPELLEE

Thomas B. Trent
Andrew L. Palmison
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lori Enfield, Richard Enfield, Marvin Enfield, Thomas E. Wilson as Guardian for Sharon Enfield, and Steuben County Treasurer, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> The Farmers & Merchants State Bank, <br><br> *Appellee-Plaintiff* | February 8, 2017 <br><br> Court of Appeals Case No. 76A05-1603-MF-579 <br><br> Appeal from the Steuben Superior Court <br><br> The Honorable William C. Fee, Judge <br><br> Trial Court Cause No. 76D01-1503-MF-118 |

**Altice, Judge.**

## Case Summary

[1] The Farmers & Merchants State Bank (the Bank) filed a mortgage foreclosure complaint against Marvin Enfield (Marvin) and others. The Bank and Marvin filed cross-motions for summary judgment. After a hearing, the trial court granted summary judgment in favor of the Bank. Marvin appeals, presenting two issues for our review, which we consolidate and restate as: Did the trial court err in granting the Bank's motion for summary judgment?

[2] We affirm.

## Facts & Procedural History

[3] For decades, Marvin has owned approximately 260 acres in Steuben County (the Enfield Farm).[1] At some point prior to these proceedings, Marvin had a judgment rendered against him for approximately $100,000. To pay off this and other debt, Marvin intended to sell forty acres of the Enfield farm. Richard Enfield,[2] Marvin's son, agreed to purchase what Marvin believed to be a forty-acre tract of the Enfield Farm for $236,500.00.[3] On July 11, 2013, Marvin and Richard executed a warranty deed conveying property from Marvin to Richard, but reserving a life estate interest in the real estate for Marvin. Marvin

---

[1] The Enfield Farm is comprised of ten separate tracts of land.

[2] For clarity, references to Richard are inclusive of his wife, Lori.

[3] According to Marvin, this amount was about the market price at the time for forty acres of low quality farm ground in Steuben County.

maintains that unbeknownst to him, the deed he executed conveyed the entire Enfield Farm to Richard.[4]

[4] The following day, July 12, 2013, Richard executed and delivered to the Bank a Promissory Note, by which he promised to pay to the Bank the sum of $236,500.00, together with interest (Note 1). The specified purpose of Note 1 was to purchase farmland. Contemporaneously therewith, Richard and Marvin executed a mortgage, which included a "MAXIMUM OBLIGATION LIMIT" providing that "[t]he total principal amount secured by this [mortgage] at any one time shall not exceed $ 236,500." *Appellant's Second Corrected Appendix* at 62. The mortgage expressly indicated that it secured Note 1 and "future notes and other debt instruments to be executed from time to time." *Id*. In a separate provision, the mortgage secured additional loans from the Bank to any of the individuals who signed the mortgage "under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this [mortgage]." *Id*. The entire 260-acre Enfield Farm was provided as collateral for the mortgage. Marvin maintains that he was not apprised of this fact and

---

[4] Marvin asserts that he is legally blind and therefore was unable to read the document Richard presented to him. Marvin maintains that he intended to convey only forty acres to Richard and that he relied upon Richard to apprise him of the content of the document Richard asked him to sign. Upon learning that the warranty deed conveyed the entire Enfield Farm to Richard and that the entire farm served as collateral for the mortgage, Marvin filed a tort action in the Steuben Superior Court against Richard and the Bank. In that tort action, Marvin alleged undue influence, fraud, theft and conversion, trespass, intentional infliction of emotional distress, negligent misrepresentation, breach of fiduciary duty, and breach of contract with regard to the execution of the warranty deed and subsequent mortgage. The tort action was consolidated into the foreclosure action for purposes of discovery and pretrial proceedings. By stipulation of the parties, the Bank was later dismissed from the tort action.

asserts that at all times he was under the impression that only forty acres of the Enfield Farm was to be encumbered by the mortgage.

[5] Later that same day, Richard executed a second Promissory Note (Note 2) in the amount of $67,480.88 and specified that the loan served to purchase farm equipment. Note 2 indicated that it was secured by the same mortgage as Note 1. Marvin claims that he did not know that Richard borrowed additional money under Note 2 and that he was never made aware that such debt was also secured by the mortgage.

[6] By December 2013, Richard was failing to make the monthly payments as required by the terms of Notes 1 and 2, thereby resulting in default. The Bank repossessed the farm equipment purchased with funds provided under Note 2. On March 19, 2015, the Bank filed a Complaint for Foreclosure. Thereafter, the Bank filed a motion for summary judgment on September 30, 2015, with regard to foreclosure of the mortgage based upon Note 1 only.[5] Marvin filed his response and a cross-motion for summary judgment on November 9, 2015. The trial court held a hearing on the competing summary judgment motions on January 5, 2016.

[7] On February 25, 2016, the trial court issued its order granting the Bank's motion for summary judgment and denying Marvin's cross-motion for

---

[5] The Bank acknowledges that the indebtedness secured by the mortgage is limited to a principal amount of $236,500 (i.e., the Maximum Obligation Limit), plus interest, fees, and other charges.

summary judgment. The trial court thereafter entered an *in rem* and *in personam* judgment against Marvin and Richard. Marvin requested a stay of the judgment, which the trial court denied. Marvin appealed to this court.[6] Upon Marvin's motion, this court granted a stay of the judgment. Additional facts will be provided as necessary.

## Discussion & Decision

[8] Marvin argues that the trial court erred in granting summary judgment to the Bank. An appellate court reviewing summary judgment analyzes the issues in the same way as would a trial court. *Pfenning v. Lineman*, 947 N.E.2d 392, 396 (Ind. 2011). A party seeking summary judgment must establish that "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The party moving for summary judgment bears the initial burden of establishing its entitlement to summary judgment. *Pfenning*, 947 N.E.2d at 396-97. "Only then does the burden fall upon the non-moving party to set forth specific facts demonstrating a genuine issue for trial." *Id.* at 397. The reviewing court must construe the evidence in favor of the non-movant, and resolve all doubts against the moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this

---

[6] No other named defendants participate in this appeal.

court that the ruling was erroneous. *See Perkins v. Stesiak*, 968 N.E.2d 319, 321 (Ind. Ct. App. 2012), *trans. denied*.

[9] The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), *trans. denied*. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id*.

## Material Alteration

[10] We begin by observing that "[o]ne who, with the knowledge of the creditor, furnishes collateral to secure the loan of another stands in the relation of surety to the debtor." *Owen Cnty. State Bank v. Guard*, 217 Ind. 75, 84, 26 N.E.2d 395, 398-399 (1940). We have also concluded that a person who mortgages his land to secure another's debt is a surety. *See SPCP Grp., LLC v. Dolson, Inc.*, 934 N.E.2d 771, 776 (Ind. Ct. App. 2010). Under Indiana law, a surety is treated the same as a guarantor, *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 66 (Ind. 1995), and is given special status as a "favorite of the law" who "must be dealt with in the utmost good faith." *First Fed. Bank of Midwest v. Greenwalt*, 42 N.E.3d 89, 94 (Ind. Ct. App. 2015).

[11] Here, Marvin pledged his partial interest (i.e., life estate) in the Enfield Farm as collateral for the mortgage that served as security for Richard's loans. Like the parties, we will assume that Marvin is in the position of a surety.

[12] With regard to a surety's obligation, the Indiana Supreme Court has found that a surety is discharged and the surety's collateral is released "by any action of the creditor which would release a surety, such as the extension of the time of payment of the debt, the acceptance of a renewal note, or the release of other security." *Guard*, 217 Ind. at 84, 26 N.E.2d at 399 (citations omitted). Additionally, a surety may be discharged due to a material alteration of the underlying obligation. *Keesling v. T.E.K. Partners, LLC*, 861 N.E.2d 1246, 1251 (Ind. Ct. App. 2007). We have previously held that

> [g]uarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect or impairs or suspends the remedy for its enforcement. Moreover, when the principal and obligee cause a material alteration of the underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability. A material alteration which will effect a discharge of the guarantor must be a change which alters the legal identity of the principal's contract, substantially increases the risk of loss to the guarantor, or places the guarantor in a different position. The change must be binding.

*Id*. (citation and internal quotation marks omitted). This court has also stated that "[a]lteration of the contract giving rise to discharge of a surety entails either a change in the physical document itself or a change in the contract between the creditor and the principal debtor which creates a different duty of performance on the part of the principal debtor than that which the surety guaranteed." *Greenwalt*, 42 N.E.3d at 95 (quoting *White v. Household Fin. Corp.*, 158 Ind.App. 394, 400, 302 N.E.2d 828, 832 n. 3 (1973)).

[13] Marvin does not contest his signature on the mortgage, nor does he dispute that Richard defaulted. Marvin's argument is that because of the Bank's material alteration to the mortgage, he, as surety, was discharged. Marvin identifies the material alteration as the Bank's extension of additional credit through the issuance of Note 2 to Richard. Specifically, Marvin asserts that Note 2 increased the principal secured by the mortgage by almost thirty percent, which nearly doubled his default liability. Marvin also asserts that the obligation under Note 1 and the additional obligation under Note 2 exceeded the maximum obligation limit under the mortgage.[7] Thus, Marvin contends that the issuance of Note 2 was a material alteration that discharged him as surety. Finally, Marvin maintains that Note 2 was executed without his knowledge or consent.

[14] In support of his argument, Marvin directs us to this court's decision in *Greenwalt*. Marvin claims that *Greenwalt* holds that when a third-party mortgage contains a debt limit, and the underlying borrower's obligation is increased to exceed that limit, the surety is released. We disagree with Marvin's reading of *Greenwalt*.

[15] In *Greenwalt*, a bank extended a loan to a corporate borrower in the form of an interest-only revolving line of credit. The loan was secured by a guaranty from

---

[7] Contrary to Marvin's argument, the Bank's extension of additional credit to Richard through Note 2 did not alter Martin's liability under the mortgage. Regardless of the extension of credit through Note 2, pursuant to the express terms of the mortgage, Marvin's maximum obligation remained $236,500.

the owner and a mortgage on two parcels of real estate that was signed by the owner and his wife. The debt secured by the mortgage was limited to the revolving line of credit and any renewals or replacements. The mortgage also provided that "[t]he lien of this Mortgage shall not exceed at any one time $300,00.00." 42 N.E.3d at 91 (quoting *Appellant's Appendix* at 17). Shortly after the mortgage was executed, the owner and his wife divorced. As part of the divorce settlement, each was awarded one of the mortgaged properties.

[16] Over the course of the next eleven years, the bank renewed the note in the principal amount of $300,000. During that time, the bank also extended the corporate borrower additional credit as well as an additional "over line" credit, all which purported to be secured by the original mortgage. These subsequent extensions of credit to the corporate borrower were made without wife's knowledge or consent. Eventually, the additional loans were consolidated into a single term note, which, taken with the unpaid principal under the original note, brought the total outstanding debt secured by the mortgage to $456,117.95.

[17] In 2009, the original interest-only revolving line of credit was converted into a closed line of credit that required the corporate borrower to make payments of principal together with accrued interest. In 2011, the owner filed bankruptcy. During the bankruptcy proceedings, all collateral, with the exception of the real estate parcel that was awarded to wife, was liquidated and all proceeds were applied to amounts due and owing under the single term note rather than the original obligation. The bank then filed a complaint to foreclose its interest in

wife's parcel of real estate pursuant to the mortgage. Wife denied that her parcel was subject to the mortgage. In response to the foreclosure action, wife moved for summary judgment, arguing that her parcel had been discharged from the lien under the mortgage because of the bank's unapproved alteration of the original note and mortgage. The trial court granted partial summary judgment in favor of wife, concluding that the Bank breached the terms of the mortgage by applying proceeds and payments first to obligations in excess of $300,000, which were unapproved obligations.

[18]     On appeal, the bank argued that there was no material alteration of the underlying indebtedness that would have released wife's parcel as collateral under the mortgage. Wife focused on the additional extensions of credit in excess of the original amount as being in violation of the mortgage terms and thereby serving to discharge her as surety. The court, however, explicitly stated that its decision would be based on whether there was a "material alteration" of the agreement between the bank and corporate borrower. *Id*. The court explained:

> the fact that the lien of the Mortgage by its terms could not exceed $300,000 *does not impact* whether the changes to [the corporate borrower's] loan terms constituted material alterations; indeed, the relevant inquiry is whether there were material alterations made in the principal debtor's underlying obligation such that it was no longer the contract which the surety agreed to guaranty.

*Greenwalt*, 42 N.E.3d at 96 (emphasis supplied).  This court then held that the bank's conversion of the original note from an interest-only line of credit to a term note with installment payments of principal and interest constituted a material alteration of the agreement between the bank and the corporate borrower in that it created a different duty of performance on the part of the corporate borrower.  In other words, this alteration was such that the court deemed the contract was no longer the obligation to which the wife, as surety, agreed.  The court expressly did not hold that additional extensions of credit over the maximum loan amount was a material alteration.  Thus, in short, *Greenwalt* does not stand for the proposition asserted by Marvin.  *See also Keesling v. T.E.K. Partners, LLC*, 861 N.E.2d 1246, 1251 (Ind. Ct. App. 2007) (holding that issuance of a second note that included additional funds, capitalized interest due on the first note, and extended the time for payment constituted a material alteration thereby discharging the guarantors from liability under the mortgage).

[19]    Other than his argument that he was discharged as surety because the issuance of Note 2 exceeded the maximum indebtedness clause in the mortgage, Marvin makes no other argument with regard to a material alteration of the underlying agreement.  Indeed, there is no dispute that there has been no renewal, modification, or extension of Note 1 since its execution.  Marvin's obligations as surety remain the same as when the mortgage was executed.  Marvin has failed to establish that there was a material alteration of the mortgage agreement that would have discharged him as surety.

[20] On a final note, the mortgage clearly indicated it could serve as security for additional obligations beyond Note 1. For instance, the title of the mortgage states that it was a real estate mortgage "With Future Advance Clause". *Appellant's Second Corrected Appendix* at 61. Further, the mortgage defined the secured debt as all promissory notes plus future notes and other debt instruments to be executed from time to time. It also expressly secured the repayment and performance of any and all additional obligations of any of the mortgagors to the Bank, whether such obligations already existed or arise in the future. Thus, by signing the mortgage, Marvin and the others consented to the mortgage securing additional loans such as Note 2.

### Fraud

[21] Marvin also argues that he presented a prima facie case of fraud thereby creating a question of fact so as to preclude summary judgment in favor of the Bank. As noted by the parties,

> [a] surety who has been misled by the principal as to the character and extent of an obligation signed and assumed at the request of the latter cannot make the fraud of the principal available as a defense, unless he can also show that the payee or obligee participated in, or had knowledge of, the fraud or deception.

113 Ind. 521, 16 N.E.196, 196 (1888).

[22] Marvin's fraud claim is based upon his belief that he conveyed to Richard only forty acres of the Enfield Farm. Marvin asserts that Richard fraudulently

obtained a deed to the entire Enfield Farm and then pressured him into executing the mortgage with the entire Enfield Farm put up as collateral. With regard to the Bank, Marvin points to the fact that his initials do not appear on the second page of the mortgage where the collateral is identified by reference to Exhibit A, which provides the legal description for each tract of land that comprises the Enfield Farm. We note, however, that Exhibit A appears to bear Marvin's initials. Without more, Marvin cannot succeed on his claim that the Bank participated in or had knowledge of the fraud or deception that Marvin asserts against Richard. The trial court properly granted summary judgment in favor of the Bank.

Judgment affirmed.

Bradford, J. and Pyle, J., concur.