FILED

Mar 21 2018, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Andrew L. Teel | James R. Williams |
| Fort Wayne, Indiana | Christopher L. Bills |
| | Matthew L. Kelsey |
| | DEFUR VORAN, LLP |
| | Muncie, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R. Kinsey Brooks, Susan K. Brooks, | March 21, 2018 |
| *Appellants-Defendants,* | Court of Appeals Case No. 01A05-1709-MF-2174 |
| v. | Appeal from the Adams Circuit Court |
| Bank of Geneva, | The Honorable Chad E. Kukelhan, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 01C01-1605-MF-16 |

**Barnes, Judge.**

## Case Summary

[1]     R. Kinsey and Susan Brooks appeal the trial court's grant of summary judgment in favor of Bank of Geneva ("the Bank") and the denial of their motion for summary judgment. We reverse and remand.

## Issue

The Brookses raise three issues. We need address only one dispositive issue: whether the Brookses were released from a mortgage obligation to the Bank when the terms of the third-party debt the mortgage secured were altered.

## Facts

On August 15, 2013, dairy farmers Matthew and Ginger Summersett executed a promissory note to borrow $398,000.00 from the Bank. Ginger is the Brookses' daughter, and Matthew is their son-in-law. On the same date, the Brookses executed a mortgage in favor of the Bank for farmland they owned in Berne, in order to partially secure the Summersetts' debt to the Bank. The Summersetts also secured the debt with a mortgage on four parcels of their own property. The Brookses' mortgage specified that they were not personally liable for the Summersetts' debt.

Also on August 15, 2013, the Bank issued two other loans to the Summersetts: one for $994,500.00 and one for $307,500.00. On October 31, 2013, the Bank loaned another $50,000.00 to the Summersetts; it was secured by a mortgage on one of the four pieces of property the Summersetts mortgaged for the $398,000.00 loan. On October 31, 2014, the Bank loaned the Summersetts another $48,976.22; again, it was secured by a mortgage on one of the properties mortgaged for the $398,000.00 loan. The Brookses were not aware of these additional loans to the Summersetts.

[5]     On October 8, 2015, the Bank agreed to change the terms of the $398,000.00 promissory note to provide for semi-annual payments rather than monthly payments by the Summersetts.  The monthly payment amount had been $2,173.80, while the new semi-annual payment was to be $13,102.28.  The first modified payment was due on March 15, 2016.  However, the Summersetts never made that payment or any subsequent payment on the loan.  The Brookses were not notified of this modification to the promissory note.  According to the Bank, this modification was made "in order to address and accommodate the Summersetts [sic] cash flow issues regarding their ceasing of dairy operations . . . ."  App. Vol. III p. 98.

[6]     In late 2015 and early 2016, the Summersetts began selling off the real estate they had mortgaged, as well as items of farm equipment and cattle.  The total of these sales greatly exceeded $398,000.00.  However, the proceeds of the sales were applied only to the other four loans the Bank had made to the Summersetts, all of which were eventually deemed paid in full.

[7]     On May 19, 2016, the Bank filed a complaint against the Summersetts and Brookses for breach of note and foreclosure of mortgage with respect to the $398,000.00 loan; the complaint was amended on June 21, 2016.  It alleged a current balance due on the note of $407,932.18.  The complaint only sought foreclosure of the Brookses' mortgage, however.[1]  In fact, on June 3, 2016, the

---

[1] The complaint also made fraud allegations against the Summersetts.

Bank executed and duly filed with the Adams County Recorder the following "SATISFACTION OF MORTGAGE":

> This Certifies that a mortgage, executed by Matthew K. Summersett and Ginger A. Summersett, to Bank of Geneva, Geneva, Adams County, an Indiana Corporation on the 15th day of August, 2013, calling for $398,000.00, and recorded in Instrument #2013003704, Adams County, State of Indiana, has been paid in full and is hereby released.

*Id.* at 96. A Bank officer later stated that this mortgage was released "to facilitate the sale of the mortgaged land that served as collateral to secure multiple obligations to the Bank of Geneva and to allow the Summersetts to satisfy loans other than" the $398,000.00 note. *Id.* at 98. However, the officer also stated that the document filed with the Adams County Recorder had "inadvertently" said that the $398,000.00 loan was paid in full. *Id.* at 99. The Brookses' answer to the complaint included a counterclaim for abuse of process against the Bank.

[8]     On October 24, 2016, the Bank filed a motion for partial summary judgment, seeking an *in rem* decree of foreclosure on the property the Brookses mortgaged. On January 11, 2017, the Brookses filed a response and cross-motion for partial summary judgment, asserting in part that their mortgage had been released by the actions of the Bank and the Summersetts. On September 5, 2017, the trial court denied the Brookses' motion for partial summary judgment and granted the Bank's motion, finding the Bank was then owed $462,772.89 and ordering sale of the Brookses' property if the judgment was not paid.

The Brookses initiated an appeal. The Bank thereafter filed with the trial court a motion to set an appeal bond, requesting an amount no less than $500,000.00. After a hearing in which an expert appraised the Brookses' property at approximately $250,000.00,[2] the trial court set an appeal bond of $285,000.00 and stayed execution of the judgment. On February 1, 2018, upon the Brookses' motion, this court reduced the appeal bond to $25,000.

# Analysis

## *I. Appeal Bond*

Before turning to the merits of the case, we will explain our decision to substantially reduce the appeal bond in this case, for purposes of future guidance to trial courts. Indiana Appellate Rule 18 states in part:

> No appeal bond shall be necessary to prosecute an appeal from any Final Judgment or appealable interlocutory order. Enforcement of a Final Judgment or appealable interlocutory order from a money judgment shall be stayed during appeal upon the giving of a bond, an irrevocable letter of credit, or other form of security approved by a trial court or Administrative Agency. The trial court or Administrative Agency shall have jurisdiction to fix and approve the bond, irrevocable letter of credit, or other form of security, and order a stay prior to or pending an appeal. After the trial court or Administrative Agency decides the issue of a stay, the Court on Appeal may reconsider the issue at any time upon a showing, by certified copies, of the trial court's

---

[2] We do not have a transcript of this hearing, but the parties agree that this testimony was given.

action. The Court on Appeal may grant or deny the stay and set or modify the bond, letter of credit, or other form of security. . . .

Additionally, Indiana Trial Rule 62(D)(2) provides the following guidelines for determining the amount of an appeal bond:

> When the judgment is for the recovery of money not otherwise secured, the amount of the bond or letter of credit shall be fixed at such sum as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, unless the court after notice and hearing and for good cause shown fixes a different amount or orders security other than a bond or letter of credit. *When the judgment determines the disposition of the property in controversy as in real action, replevin, and actions to foreclose liens* or when such property is in the custody of the sheriff or when the proceeds of such property or a bond or letter of credit for its value is in the custody or control of the court, *the amount of the appeal bond or letter of credit shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay*.

(Emphases added).

[11] "The determination of the amount of an appeal bond lies within the discretion of the trial court, and will not be disturbed absent an abuse of discretion." *Kocher v. Getz*, 824 N.E.2d 671, 675 (Ind. 2005). A trial court abuses its discretion in ruling on a matter when its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Kosarko v. Padula*, 979 N.E.2d 144, 146 (Ind. 2012).

[12]     We reduced the appeal bond in this case because the trial court misinterpreted the law in setting the bond at $285,000.00. The trial court apparently reached that amount based upon a $250,000.00 valuation of the real property, plus appellate attorney fees the Bank had already incurred of approximately $15,000.00, plus interest at 8% per annum on $250,000.00 and based on an assumed delay in resolution of this case by this court lasting approximately one year. But, Trial Rule 62(D) expressly limits an appeal bond in a foreclosure case such as this only to an amount that "will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay." It also is important to emphasize that this was purely an *in rem* judgment against the Brookses' property. There was no attempt to recover the judgment against the Brookses personally; the Brookses' mortgage expressly stated, "the Non-Obligated Mortgagor is not personally liable for the Secured Debts." App. Vol. II p. 29.

[13]     An appeal bond in a foreclosure case can include an amount reflecting "use" of the property during the appeal. "Ordinarily, the proper measure of damages for loss of use of property is the fair rental value of the property during the time that the injury existed." *Williams v. Hittle*, 629 N.E.2d 944, 951 (Ind. Ct. App. 1994), *trans. denied*. The Bank does not claim it presented any evidence regarding the rental value of the Brookses' land; the Brookses assert that the farmland could not generate any rental income anyway during the winter and not until the spring planting season begins in April or May at the earliest. Additionally, as for "damages for delay," that phrase might encompass things

such as waste or depreciation of the property while the appeal is pending. *See Opp v. Ten Eyck*, 99 Ind. 345, 347 (1884); *Scott v. Marchant*, 88 Ind. 349, 353 (1882). There is a lack of indication that either depreciation or waste will be a problem for this land.

[14] The Bank does assert there is the possibility the Brookses could sell the land to a third party during the appeal, and "the Bank could easily be out the value of the land." Appellee's Verified Motion to Remand and Response to Appellant's Verified Motion to Modify Appeal Bond, p. 7. We do not see how that could possibly happen. The land is mortgaged to the Bank and is embroiled in litigation. Even if a third party did for some reason buy the land, it would still be subject to the mortgage. *See Dorothy Edwards Realtors, Inc. v. McAdams*, 525 N.E.2d 1248, 1256 (Ind. Ct. App. 1988).

[15] Thus, in reducing the appeal bond here to $25,000.00, we considered that the Bank has incurred approximately $15,000.00 in appellate attorney fees, and the Brookses' mortgage contains an attorney fee provision that would allow the Bank to recover these fees from the Brookses if they lost this appeal. To this we added $10,000.00 in potential interest at 8% per annum on $250,000.00, confident in our ability to decide this case in much less time than the trial court or the Bank thought we would.

## II. Release of Mortgage

[16] We now turn to the merits of granting summary judgment in the Bank's favor and denying the Brookses' partial summary judgment motion. We review a

grant of summary judgment de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* "The fact that the parties filed cross-motions for summary judgment does not affect our standard of review. In such case we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Alexander v. Marion Cty. Sheriff*, 891 N.E.2d 87, 92 (Ind. Ct. App. 2008) (citation omitted), *trans. denied*.

[17] We will focus solely upon whether the trial court properly denied the Brookses' motion for partial summary judgment on the question of whether their mortgage was released. If it was released, there was nothing for the Bank to foreclose on and no basis for granting it summary judgment.

[18] One who mortgages his or her land to secure the debt of another stands in the position of surety to the debtor. *First Fed. Bank of Midwest v. Greenwalt*, 42 N.E.3d 89, 94 (Ind. Ct. App. 2015). It is axiomatic that a surety is a favorite of the law and must be dealt with in the utmost good faith. *Id.* (quoting *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 147 (Ind. Ct. App. 2004) (in turn

quoting *Ind. Telco Fed. Credit Union v. Young*, 156 Ind. App. 483, 485, 297 N.E.2d 434, 435 (1973)). Longstanding precedent also dictates,

> One who, with the knowledge of the creditor, furnishes collateral to secure the loan of another stands in the relation of surety to the debtor and such collateral is released by any action of the creditor which would release a surety, such as the extension of the time of payment of the debt, the acceptance of a renewal note, or the release of other security.

*Owen Cty. State Bank v. Guard*, 217 Ind. 75, 84-85, 26 N.E.2d 395, 398-99 (1940).

[19] If a debtor and creditor make a material alteration in the underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability. *Yin v. Society Nat'l Bank Indiana*, 665 N.E.2d 58, 64 (Ind. Ct. App. 1996), *trans. denied*. A "material" alteration is one that changes the legal identity of the debtor's contract, substantially increases the risk of loss to the guarantor, or places the guarantor in a different position. *Id.* It is irrelevant whether an alteration was intended for the surety's benefit, so long as the alteration entails either a change in the physical document or a change in the terms of the contract between the debtor and creditor that creates a different duty of performance on the part of the debtor. *Greenwalt*, 42 N.E.3d at 95.

[20] The Bank materially altered the promissory note with the Summersetts in at least two respects, thus releasing the Brookses' mortgage. First, the Bank changed the payment terms from monthly to semi-annually. The Bank contends this was not a material alteration because it did not change the

amount of money the Summersetts owed or anything of that nature, and the semi-annual payment amount was roughly equal to six monthly payments.

[21] Clear precedent dictates that the Bank is incorrect. In *Telco*, we held that a surety was discharged from liability where the creditor agreed to accept lower payments from the debtor toward a promissory note, going from $75 every two weeks to $138 per month, without the surety's knowledge or consent. *Telco*, 165 Ind. App. at 486-87, 297 N.E.2d at 436. There, as here, the change in payment terms apparently was due to the debtor's financial hardship—or "cash flow issues" as the Bank here described it. App. Vol. III p. 98. Even if the change in the Summersetts' payment terms was intended to make it more likely that they would be able to pay the loan back, the Brookses were entitled to know about this change. This would have alerted the Brookses to the fact that the Summersetts were having difficulty paying back the loan on its original terms and allowed them to protect themselves and their collateral if possible. The change in the Summersetts' payment terms was a material alteration to the original contract between them and the Bank. Because the Brookses did not consent to that change, they were discharged from liability as sureties and their mortgage should have been released.

[22] It also is clear that the Brookses were discharged as sureties and their mortgage should have been released when the Bank released the Summersetts' own mortgage. By this action, the Brookses were placed in a much more perilous position than they were when the Summersetts' land also secured the $398,000.00 loan. And, the record indicates that the Summersetts' land was

worth far more than $398,000.00, or the value of the Brookses' own land. The Brookses' property went from one of five parcels of real estate securing the promissory note to the only parcel. The Brookses did not agree to put their land at such peril. Our supreme court has explained:

> "It is a well settled principle of equity, that a creditor, who has the personal contract of his debtor, with a surety, and has also, or afterwards takes property from the principal, as a pledge or security for the debt, is to hold the property fairly and impartially, for the benefit of the surety as well as himself; and if he parts with it, without the knowledge or against the will of the surety, he shall lose his claim against the surety to the amount of the property so surrendered."

*Farmers Loan & Tr. Co. v. Letsinger*, 652 N.E.2d 63, 66 (Ind. 1995) (quoting *Stewart v. Davis' Executor*, 18 Ind. 74, 75-76 (1862)).

[23] The facts are undisputed with respect to the question of release.[3] The Brookses did not know or consent to the change in payment terms for the promissory note or the Bank's release of the Summersetts' collateral for the loan. As a matter of law, the mortgage on the Brookses' property should have been released upon either act.

---

[3] The Brookses assert there is a question of fact as to whether the Summersetts actually paid the $398,000.00 debt to the Bank in full and also challenge the admissibility of an affidavit the Bank prepared in which it claimed the debt was not in fact paid in full, despite language to the contrary in its release filing with the Adams County Recorder. We need not address the admissibility of that affidavit or whether the debt was paid in full. We also need not address the Brookses' arguments that the Bank's subsequent issuance of additional loans to the Summersetts released the Brookses as sureties, or that the Bank acted improperly in applying the proceeds of the sales of the Summersetts' properties to loans other than the $398,000.00 loan.

# Conclusion

The trial court should have granted partial summary judgment to the Brookses on the release issue. We reverse and remand with instructions that the mortgage on the Brookses' property be released. Because the mortgage is released, the Bank cannot foreclose on it, and its own partial summary judgment motion should have been denied. The Brookses' claim for abuse of process remains pending.

Reversed and remanded.

Najam, J., and Mathias, J., concur.